Arlene M. MATTERN, Appellant,

v.

F. David MATHEWS, Secretary of Health, Education and Welfare, Appellee.

No. 77–1629.

United States Court of Appeals, Third Circuit.

Argued Feb. 17, 1978.

Decided June 30, 1978.

Alan Linder, Central Pennsylvania Legal Services, Lancaster, Pa., for appellant.

David W. Marston, U. S. Atty., Philadelphia, Pa., William Kanter, Robert S. Greenspan, U. S. Dept. of Justice, Washington, D. C., Steven L. Jones, Dept. of Health, Education, and Welfare, Baltimore, Md., for appellee.

Before GIBBONS and HUNTER, Circuit Judges and STAPLETON, District Judge.*

## OPINION

JAMES HUNTER, III, Circuit Judge.

In this appeal we again examine the constitutionality of the procedures established by the Secretary of Health, Education and Welfare for recoupment of alleged overpayments under section 204 of the Social Security Act.[1] When this case was first present-

---

\* Honorable Walter K. Stapleton, United States District Judge for the District of Delaware, sitting by designation.

1. 42 U.S.C. § 404 (1970):

    (a) Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary, as follows:

    (1) With respect to payment to a person of more than the correct amount, the Secretary shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid per-

ed to the district court, the administrative procedures were found to violate due process since they permitted an adjustment or reduction of social security payments without affording the beneficiary the right to a prior oral hearing. *Mattern v. Weinberger,* 377 F.Supp. 906 (E.D.Pa.1974). On review, we affirmed that decision with certain modifications. *Mattern v. Weinberger,* 519 F.2d 150 (3d Cir. 1975). The Supreme Court granted the Secretary's petition for certiorari, and vacated and remanded the case for reconsideration in light of its decision in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *Mathews v. Mattern,* 425 U.S. 987, 96 S.Ct. 2196, 48 L.Ed.2d 812 (1976). We remanded the case to the district court, which reversed its earlier ruling and held the existing procedures satisfied the requirements of due process. *Mattern v. Mathews,* 427 F.Supp. 1318 (E.D.Pa.

1977). We reverse, since we do not believe that *Eldridge* and subsequent cases substantially alter the result in our original decision.

## I. THE STATUTORY BACKGROUND AND REGULATIONS

Section 204 of the Social Security Act permits the Secretary to recover overpayments of benefits paid under Title II of the Act, 42 U.S.C. §§ 401 *et seq.,* by withholding a portion of future benefits until the amount of the overpayment is recouped. *Id.* § 404(a). The right of recovery, however, is limited by section 204(b), *id.* § 404(b). That section provides that there may be no recoupment when the overpaid beneficiary is "without fault"[2] and the recoupment either would "defeat the purpose" of Title II of the Act[3] or would be "against equity and good conscience."[4]

---

son or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payment to such overpaid person, or shall apply any combination of the foregoing.

. . .

\*  \*  \*  \*  \*  \*

(b) In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

**2.** "Fault" is defined in 20 C.F.R. § 404.507, which provides:

"Fault" as used in "without fault" (*see* §§ 404.506 and 405.355) applies only to the individual. Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault. In determining whether an individual is at fault, the Administration will consider all pertinent circumstances, including his age, intelligence, education, and physical and mental condition. What constitutes fault (except for "deduction overpayments"—see § 404.510) on the part of the overpaid individual or on the part of any other individual from whom the Administration seeks to recover the overpay-

ment depends upon whether the facts show that the incorrect payment to the individual or to a provider of services or other person, or an incorrect payment made under section 1814(e) of the Act [42 U.S.C. § 1395f(e)], resulted from:

(a) An incorrect statement made by the individual which he knew or should have known to be incorrect;  or

(b) Failure to furnish information which he knew or should have known to be material;  or

(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

**3.** The phrase "defeat the purpose" of Title II is defined in 20 C.F.R. § 404.508, which provides:

(a) General. "Defeat the purpose of title II [42 U.S.C. §§ 401 *et seq.*]," for purposes of this subpart, means defeat the purpose of benefits under this title, i. e., to deprive a person of income required for ordinary and necessary living expenses. This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs. An individual's ordinary and necessary expenses include:

(1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e. g., life, accident,

---

**4.** See note 4 on p. 251.

The Secretary's regulations provide the procedure for recovery of overpayments made to recipients of old-age or disability benefits. First, an initial determination is made that an overpayment has occurred and that section 204(b) provides no basis for a "waiver" of recoupment (20 C.F.R. § 404.-905). All recipients subject to recoupment are then sent letters which set forth the reasons for the proposed recoupment, the availability of reconsideration of the determination of overpayment, the conditions for "waiver" under section 204(b), and the need to consult with a local Administration office within thirty days if the recipient feels that circumstances would justify reconsideration or "waiver" (Social Security Claims Manual § 5503; 20 C.F.R. § 404.907). Full benefits are paid during the thirty day period (Claims Manual § 5503.3).

Once a request for reconsideration or "waiver" and supporting documents have been filed, the Secretary may further delay recoupment until the case has been reconsidered (Claims Manual §§ 5503.3, 5503.5). If the Secretary adheres to his initial determination after the reconsideration (20 C.F.R. § 404.914), the claimant is so notified and benefits begin to be withheld. Only at that time, after benefits have been reduced, does the claimant have the right to an evidentiary *de novo* hearing (20 C.F.R. § 404.917). At the hearing, the beneficiary has the right to introduce oral testimony and to cross-examine witnesses. (20 C.F.R. §§ 404.917–404.934). A request for a hearing does not delay recoupment. While the record in this case is not clear, it appears that a delay of several months usually occurs between the time benefits are withheld and the first opportunity for a hearing. The hearing is first reviewable by the Appeals Council of the Social Security Administration (20 C.F.R. § 404.945) and then by a federal district court under section 205(g) of the Act, 42 U.S.C. § 405(g).

## II. FACTS

The facts giving rise to this case are fully described in our original opinion, 519 F.2d at 154–55. Briefly, the named plaintiff in this suit, Arlene Mattern, applied in 1971 for disabled widow's benefits under 42 U.S.C. § 402(e)(1)(B)(ii), based on the social security earnings of her husband. Her application was approved and benefits were scheduled to begin in December 1971, after the statutory waiting period of six months.[5]

In January and February of 1972, plaintiff received two checks. She received her first regular benefits check in the amount of $119.30. Next, she received a special check for $1063.80 for benefits covering the period May to December, 1971. The latter check was erroneously issued.

The Social Security Administration contends that plaintiff was told to return the

and health insurance including premiums for supplementary medical insurance benefits under title XVIII [42 U.S.C. §§ 1395 *et seq.*]), taxes, installment payments, etc.;

(2) Medical, hospitalization, and other similar expenses;

(3) Expenses for the support of others for whom the individual is legally responsible; and

(4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

(b) When adjustment or recovery will defeat the purpose of title II. Adjustment or recovery will defeat the purposes of title II [42 U.S.C.A., § 401 et seq.] in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses."

4. "Against equity and good conscience" is defined in 20 C.F.R. § 404.509, which provides:

"Against equity and good conscience" means that adjustment or recovery of an incorrect payment (under title II or title XVI-II [42 U.S.C. §§ 401 *et seq.* or §§ 1395 *et seq.*]) will be considered inequitable if an individual, because of a notice that such payment would be made or by reason of the incorrect payment, relinquished a valuable right (examples (1), (2), and (5)) or changed his position for the worse (examples (3), and (4)). In reaching such a determination, the individual's financial circumstances are irrelevant.

5. The Act has since been amended to provide for a five-month waiting period. 42 U.S.C. § 423(c)(2) (Supp. V 1975).

special check in a letter dated January 28, 1972 and in a telephone conversation on that day. District office records also show that the plaintiff's sister was told that plaintiff should return the special check. Plaintiff counters that the letter was ambiguous and was not understood to request the return of the $1063.80 check, and that she never received the phone calls. The check was never returned.

On July 14, 1972, plaintiff was sent a letter advising her that she had received $1063.80 more than she was entitled to and that an adjustment would be made in her forthcoming benefit payments. On August 7, 1972, plaintiff requested the Secretary to "waive" recoupment of the overpayment. "Refund" and "without fault" questionnaires were filed to support the request. Plaintiff listed her monthly expenses and stated that she had no other source of income, that she had been ill, that she had spent the proceeds of the check on her bills, and that she had never received any letter or phone call advising her that the $1063.80 check had been sent in error. The district office made an initial determination that Mrs. Mattern was not "without fault" and so denied the request for "waiver." The office relied on both the January 28 letter and office records of the phone calls. Plaintiff then filed a request for reconsideration, which was denied on January 3, 1973. The office determined that plaintiff's benefits amount would be reduced by $30 per month until the full amount of the overpayment was recovered.

Prior to the reconsideration, plaintiff filed this class action in the District Court for the Eastern District of Pennsylvania, seeking injunctive relief for her claim that

the procedures followed by the Secretary violated due process by failing to provide for a hearing before the reduction of benefits. The district court originally held that the due process clause required a hearing prior to the adjustment of social security benefits. *Mattern v. Weinberger,* 377 F.Supp. 906 (E.D.Pa.1974). Appeals by the Secretary eventually resulted in the district court reconsidering its decision in light of *Mathews v. Eldridge, supra.* In this second decision, the district court found jurisdiction under either 28 U.S.C. § 1361 or 42 U.S.C. § 405(g), or both, and held that due process does not require a hearing before recoupment commences by the withholding of benefits. Accordingly, the court granted a motion by the Secretary for summary judgment. The court also denied plaintiff's renewed motion for class certification. *Mattern v. Mathews,* 427 F.Supp. 1318 (E.D. Pa.1977). Plaintiff filed a timely notice of appeal.

## III. JURISDICTION

The Secretary argues that we are without jurisdiction to decide this case at this time. In our first opinion in this case, we found jurisdiction under the Mandamus Act.[6] 519 F.2d at 155–57. In its reconsideration of the case, the district court found that *Eldridge* had lowered the jurisdictional barriers to review under section 205(g) of the Social Security Act,[7] thus casting doubt on the propriety of the extraordinary mandamus jurisdiction. It therefore assumed jurisdiction at least under section 205(g).

The Secretary argues that section 205(h) of the Act prohibits the exercise of mandamus jurisdiction by this court.[8] He inter-

---

6. 28 U.S.C. § 1361 (1970):

   The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

7. 42 U.S.C. § 405(g) (1970), which provides, in part:

   Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such

decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. . . .

8. *Id.* § 405(h):

   The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United

prets recent Supreme Court cases as indicating that section 205(g) is the exclusive avenue of judicial review of decisions and procedures of the Secretary. *Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Weinberger v. Salfi,* 422 U.S. 749, 764, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). *See also Norton v. Mathews,* 427 U.S. 524, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976). The Secretary then concludes that plaintiff's case is not ripe for review under section 205(g).

At the outset, we would noté that it is far from clear that section 205(h) bars mandamus jurisdiction in this case. Several other courts, after considering the Supreme Court cases cited by the Secretary, have found jurisdiction under section 1361 in cases involving Social Security procedures. *See, e. g., Elliott v. Weinberger,* 564 F.2d 1219, 1225–28 (9th Cir. 1977), *petition for cert. filed,* 46 U.S.L.W. 3680 (U.S. April 21, 1978); *White v. Mathews,* 559 F.2d 852, 855–56 (2d Cir. 1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *Caswell v. Califano,* 435 F.Supp. 127, 131–33 (D.Me.1977). Like the district court below, however, we do not need to reach the question of mandamus jurisdiction.

We hold that we have jurisdiction over this case under section 205(g), as interpreted by our recent decision in *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333 (3d Cir. 1977). Before we may take jurisdiction under this section, plaintiff must satisfy two conditions. First, a claim for benefits must have been presented to the Secretary. Second, there must have been a final decision after a hearing. 42 U.S.C. § 405(g); *see Mathews v. Diaz,* 426 U.S. 67, 75–77, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); *Mathews v. Eldridge, supra,* 424 U.S. at 328–29, 96 S.Ct. 893; *Liberty Alliance of the Blind v. Califano, supra,* 568 F.2d at 344.

The first requirement was met by the plaintiff. The second requirement, which is essentially an exhaustion requirement, was not met, but is waivable either by the Secretary, *Mathews v. Diaz, supra,* 426 U.S. at 76–77, 96 S.Ct. 1883, or by the court on its own determination, *Mathews v. Eldridge, supra,* 424 U.S. at 330–32, 96 S.Ct. 893. *Liberty Alliance of the Blind v. Califano, supra,* 568 F.2d at 344; *see Weinberger v. Salfi, supra,* 422 U.S. at 765–67, 95 S.Ct. 2457. In *Eldridge* the Court discussed two factors in reaching its conclusion that further exhaustion should not be required. First, the claim presented in that case, the right to a hearing before disability benefits are terminated, was said to be collateral to the substantive claim of entitlement to benefits. 424 U.S. at 330, 96 S.Ct. 893. We hold, and the Secretary concedes, that Mrs. Mattern's assertion of the right to a prior hearing is collateral to her claim for benefits. Second, the Supreme Court found that plaintiff had raised "at least a colorable claim . . . an erroneous termination [of disability benefits] would damage him in a way not recompensable through retroactive payments." 424 U.S. at 331, 96 S.Ct. at 901 (footnote omitted). We find that the plaintiff in this case, in light of the financial hardship she alleges as a basis for "waiver" of recoupment, has made a colorable showing of irreparable harm from the interim reduction of benefits. We therefore find that this is a case where the claimant's interest in having the constitutional issue resolved promptly is so great that further deference to agency procedures is inappropriate. *Mathews v. Eldridge, supra,* 424 U.S. at 330, 96 S.Ct. 893; *see Liberty Alliance of the Blind v. Califano, supra,* 568 F.2d at 345–46; *De Lao v. Califano,* 560 F.2d 1384, 1388 (9th Cir. 1977); *Johnson v. Mathews,* 539 F.2d 1111, 1116–17 (8th Cir. 1976).[9]

States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter.

9. Appellant has argued that we should assume mandamus jurisdiction because of uncertainties about the availability of injunctive relief

under section 205(g), 42 U.S.C. § 405(g) (1970). The Secretary has not contended that injunctive relief is unavailable under that section.

While Congress has the power to limit the equitable powers of the federal courts, such a limitation will not be found in the absence of a clear legislative statement. *Porter v. Warner*

## IV. DUE PROCESS

The Secretary does not dispute that plaintiff's interest in social security benefits is a property right for purposes of the fifth amendment's due process clause. The Supreme Court in *Eldridge* considered this issue settled. 424 U.S. at 332, 96 S.Ct. 893. The question presented in this case is what process must be afforded a claimant before benefits are reduced in order to recoup an alleged overpayment. Basically, plaintiff contends that due process requires that a recipient of benefits have a right to an oral hearing prior to the reduction of benefits, instead of afterwards as is now provided by the Secretary's regulations and practice.

The Supreme Court, in remanding this case to us, directed that we consider the matter in light of *Eldridge*. In that case, the Court set out a three-part balancing test for determining the specific process which is constitutionally required:

> More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See, e. g., *Goldberg v. Kelly*, [397 U.S. 254] [90 S.Ct. 1011, at 1018–1022, 25 L.Ed.2d 287] 263–271 [1970].

424 U.S. at 334–35, 96 S.Ct. at 903.

### A. The Private Interest

One of the three factors involved in the balancing test in *Eldridge* is the plaintiff's interest which will be affected by the Secretary's action. The Court in *Eldridge* was

dealing with the decision of the Secretary to terminate disability benefits. The Court in large part compared this interest to the "brutal need" of the welfare recipient in continued benefits, which formed the basis of the Court's decision in *Goldberg v. Kelly*, 397 U.S. 254, 263–64, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), that a hearing is required prior to a termination of benefits. While the plaintiff's interest in *Eldridge* was found to be substantial, it was not considered to be as strong as that presented to the Court in *Goldberg*. First, unlike welfare payments, disability benefits under 42 U.S.C. § 423 are not need-based. Further, even if disability benefits are erroneously terminated, the claimant could turn to welfare payments. The *Eldridge* court, nevertheless, did not find this difference to be determinative of the question whether a prior hearing was needed, and emphasized that "the degree of difference [between the interest of the welfare and disability benefits recipients] can be overstated." 424 U.S. at 341, 96 S.Ct. at 906.

The district court found that plaintiff's interest not to have benefits temporarily reduced was weaker than the interest in *Eldridge* not to have benefits temporarily terminated. We disagree with this analysis. Unlike the disability benefits under 42 U.S.C. § 423 considered in *Eldridge*, the benefits involved in this case are in part need-based and are subject to reduction when the recipient receives income from a number of other sources. *See* 42 U.S.C. § 403; *Elliott v. Weinberger, supra*, 564 F.2d at 1231. Further, when a recipient has claimed a "waiver" of recoupment, he is claiming that recoupment would defeat the purpose of the Act or would be against equity and good conscience. 42 U.S.C. § 404(b). The Secretary's regulations interpret the statutory prohibition of recoupment in terms of financial hardship to the recipient. *See* notes 2–4 *supra*. Therefore, when a waiver is erroneously denied by the

---

Holding Co., 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946); *Hecht Co. v. Bowles*, 321 U.S. 321, 330, 64 S.Ct. 587, 88 L.Ed. 754 (1944). Since there is no language in Section 205 clearly indicating this congressional intent, we con-

clude that a district court has the power to enter an injunctive decree under that section. *In re Letourneau*, 559 F.2d 892, 894 (2d Cir. 1977); *Johnson v. Mathews*, 539 F.2d 1111, 1125 (8th Cir. 1976).

Secretary prior to a hearing, the recipient faces a particularly severe impact.[10]

Even though the recipient subject to recoupment is faced only with a reduction of benefits, his need for full benefits, particularly if he qualifies for a "waiver," may often be greater than the need of the disability benefits recipient. Nevertheless, we do not believe that the plaintiff's interests here are as strong as those involved in *Goldberg*. The victims of erroneous recoupment, like the claimant in *Eldridge*, generally have resort to welfare and other benefits. We conclude that the private interest, particularly in the "waiver" cases, falls between that considered in *Eldridge* and that in *Goldberg*. *See Elliott v. Weinberger, supra*, 564 F.2d at 1231; *cf. Tatum v. Mathews*, 541 F.2d 161, 165 (6th Cir. 1976) (Supplemental Security Income program, 42 U.S.C. §§ 1381 *et seq.*); *Johnson v. Mathews, supra*, 539 F.2d at 1121–22 (same).

### B. Utility of Prior Hearing

The second factor to be considered under *Eldridge* is the "fairness and reliability of the existing . . . procedures, and the probable value, if any, of additional procedural safeguards." 424 U.S. at 343, 96 S.Ct. at 907. In that case the Court was faced with the termination of disability benefits, which under the statute and regulations would require a "medical assessment of the worker's physical or mental condition." *Id.* The Court found:

> This is a more sharply focused and easily documented decision than the typical determination of welfare entitlement. In the latter case, a wide variety of information may be deemed relevant, and issues of witness credibility and veracity often are critical to the decisionmaking process. *Goldberg* noted that in such circumstances 'written submissions are a wholly unsatisfactory basis for decision.' 397 U.S., at 269 [90 S.Ct., at 1021.

By contrast, the decision whether to discontinue disability benefits will turn, in most cases, upon 'routine, standard, and unbiased medical reports by physician specialists', *Richardson v. Perales*, 402 U.S. [389] 404 [91 S.Ct. 1420, at 1428, 28 L.Ed.2d 842 (1971)], concerning a subject whom they have personally examined. . . . The potential value of an evidentiary hearing, or even oral presentation to the decisionmaker, is substantially less in this context than in *Goldberg*.

424 U.S. at 343–45, 96 S.Ct. at 907. The court noted that the claimant's access to information in files and the opportunity to submit further information after an initial decision lessened the risk of an erroneous determination. The court also looked to the low percentage of all disability terminations which are reversed after administrative appeal, but noted that "although we view such information as relevant, it is certainly not controlling in this case." *Id.* at 347, 96 S.Ct. at 908.

In our first decision in this case we relied to a large extent on the utility of a hearing as the determinant of what process should be due. In that opinion we separately analyzed "reconsideration" and "waiver" cases, and found a prior hearing generally not required in the former and generally required in the latter.

After a recipient of social security benefits receives a notice of an initial determination of overpayment and recoupment, he may request reconsideration of that decision. In our previous opinion, we agreed with the Secretary that " 'reconsideration' cases are generally well suited to resolution by documentary proof." 519 F.2d at 165. The decision of whether in fact an overpayment was made will usually turn on arithmetic calculations, such as whether the administration correctly computed an earn-

10. Although we do not know precisely how long the average claimant must wait for a hearing on a request for reconsideration or "waiver," administrative delays appear to be comparable to the "torpidity" considered by the *Eldridge* Court, 424 U.S. at 342, 96 S.Ct. 893.

The length of deprivation of benefits is entitled to some weight in evaluating the plaintiff's interest in a pre-recoupment hearing. *See Fusari v. Steinberg*, 419 U.S. 379, 389, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975).

ings statement, or whether two checks were received instead of one. We therefore concluded:

> In such circumstances, an examination of social security records and cancelled checks would seem to be sufficient, and it is hard to see how an oral hearing would be of much benefit to the claimant.

*Id.*

We distinguished "waiver" cases. While some of the issues involved in the determination of whether the Secretary is barred from recoupment by section 204(b) are susceptible of documentary proof, a substantial number are not. A "waiver" depends on fault, financial dependence, and detrimental reliance. *Id.* at 166–67, *Elliott v. Weinberger, supra,* 564 F.2d at 1232. Particularly the finding of fault and to a lesser extent the other two factors rest on a complex analysis of facts and of credibility. We noted that when credibility determinations were involved, the Supreme Court had indicated that written submissions were insufficient for an accurate determination and that an oral hearing would be needed. 519 F.2d at 164–67.

We believe that this analysis of the utility of a pre-recoupment hearing in reconsid-

eration and waiver cases is fully consistent with *Eldridge.* Both our prior decision and the Supreme Court's analysis of due process focused on the nature of the evidence likely to be needed for a decision by the Secretary. When that evidence is well suited to evaluation in written form, there is little need for a prior oral hearing. When the Secretary's determination of a claim rests, for example, on credibility, an oral hearing is crucial to the truth-finding process and thus is an important element in deciding what procedures the Constitution requires. *See Goldberg v. Kelly, supra,* 397 U.S. at 268–69, 90 S.Ct. 1011; *Kennedy v. Robb,* 547 F.2d 408, 414–15 (8th Cir. 1976), *cert. denied,* 430 U.S. 913, 97 S.Ct. 1325, 51 L.Ed.2d 592 (1977). *See generally Board of Curators v. Horowitz,* 435 U.S. 78, 84–91, & n. 4, 98 S.Ct. 948, 952–955, 55 L.Ed.2d 124 (1978); *Stretten v. Wadsworth Veterans Hospital,* 537 F.2d 361, 368–69 (9th Cir. 1976). This distinction is the same as was drawn by the *Eldridge* Court to contrast the need for a hearing prior to the termination of disability payments with the pre-termination hearing held to be required in *Goldberg.*[11] Accord, *Elliott v. Weinberger, supra,* 564 F.2d at 1231–34.

---

**11.** The *Eldridge* Court also viewed evidence of reversal rates as relevant to evaluation of the utility of a prior hearing. In that case, appealed reconsiderations were reversed at a rate of 58%. Since several decisions of the Secretary were reversed prior to this hearing stage, however, the court looked to the "overall reversal rate," i. e. the number of reversals after hearing in relation to all denials of benefits. This overall rate was 3.3%. 424 U.S. at 346 & n. 29, 96 S.Ct. 893. *See also Fusari v. Steinberg,* 419 U.S. 379, 383 n. 6, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975).

According to information submitted to this Court, the reversal rates for recoupment decisions are similar to those in *Eldridge.* In 1970, approximately 1,250,000 overpayments were discovered. From these recoupment determinations, 1,600 recipients requested a hearing. Hearings resulted in 560 reversals. The reversal rate in the hearing was therefore 35%, and the "overall reversal rate" less than 1%. *See Elliott v. Weinberger,* 371 F.Supp. 960, 966–67 (D.Haw.1974), *aff,d* 44 U.S.L.W 2175 (9th Cir. Oct. 1, 1975), *vacated and remanded,* 425 U.S. 987, 96 S.Ct. 2197, 48 L.Ed.2d 813 (1976), *on remand,* 564 F.2d 1219 (9th Cir. 1977), *petition for cert. filed,* 46 U.S.L.W. 3680 (U.S. April 21,

1978). The Secretary has advised the court that the Social Security Administration no longer keeps specific figures for overpayment appeals. However, the Secretary indicated his belief that these percentages have not substantially changed.

One of the elements in this appeal is the right to a hearing on claims for "waiver," under 42 U.S.C. § 402(b) (1970). In order to implement the decision in *Buffington v. Weinberger,* Civ.No. 734–73C2 (W.D.Wash. Oct. 22, 1974), *aff'd sub nom. Elliott v. Weinberger,* 44 U.S. L.W. 2175 (9th Cir. Oct. 1, 1975), *vacated & remanded,* 425 U.S. 987, 96 S.Ct. 2197, 48 L.Ed.2d 813 (1976), *on remand,* 564 F.2d 1219 (9th Cir. 1977), *petition for cert. filed,* 46 U.S. L.W. 3680 (U.S. April 21, 1978), the Secretary instituted a system of informal hearings ("personal conferences") before denying "waiver" requests. The order applied to a nationwide plaintiff class, excepting those residing in the District of Hawaii and the Eastern District of Pennsylvania (where other similar suits were pending). In 1977, 42,380 waiver requests were considered, of which 19,535 were granted in the first instance. Of those denied, 1,212 resulted in a personal conference. After a con-

## C. Governmental Interest

The third part of the *Eldridge* balancing test is the government's interest, including the governmental function involved and the fiscal and administrative burdens that a pre-recoupment hearing would involve. In large part we believe that the government interest involved in this case is similar to that analyzed in *Eldridge*. We do find some distinctions between this case and *Eldridge*, which indicate that our requiring a prior hearing would impinge less on the administration of social security benefits.

The *Eldridge* Court did not have clear evidence of the administrative burden of imposing a requirement of a hearing prior to the termination of disability payments. The Court commented that "[n]o one can predict" the increased demand for hearings if a hearing were required before termination instead of afterwards. It then reasoned, "the fact that full benefits would continue until after such hearings would assure the exhaustion in most cases of this attractive option." 424 U.S. at 347, 96 S.Ct. at 909. Further, the Court faced widely varying estimates of the probable additional costs of pre-termination hearings, and so concluded that experience with constitutionalizing administrative procedures suggested that the additional cost "would not be insubstantial." *Id.*

First, on the basis of materials submitted to this court, we have reason to question whether the assumption in *Eldridge* about increased numbers of requests for hearings should be applied to our analysis of a right to a pre-recoupment hearing.[12] Although we agree that it is impossible to predict

accurately the increased burden of providing hearings, we believe it likely that this burden would be less than was assumed in the circumstances considered in the Supreme Court's decision.

Second, we believe that the Secretary faces much less risk of loss of erroneous payments to recipients than was present in *Eldridge*. In that case, the hearing under discussion would determine whether the recipient was still eligible for benefits, after the Secretary had made an initial determination of ineligibility. If payments were made pending the hearing, the Secretary faced a substantial risk of paying benefits to an ineligible recipient without hope of recovering those funds. In contrast, the hearing we are considering is to determine whether the Secretary will be permitted to recoup an overpayment by deducting the amount from a continuing stream of benefits being paid to a concededly eligible recipient. In the general case, a delay in beginning recoupment will not jeopardize the Secretary's ability to recover from later payments. Thus, we believe that the Secretary's interest in preserving public funds is far less than was before the Supreme Court in *Eldridge*. *See generally Goldberg v. Kelly, supra,* 397 U.S. at 265, 90 S.Ct. 1011.

## D. Conclusion

In our prior consideration of this case, we looked primarily at the utility of a pre-recoupment hearing. In light of the differences we found in the determination of a reconsideration and a "waiver" case, we distinguished the process which would be

---

ference, 350 decisions were reversed. Thus, the reversal rate after the pre-recoupment hearing was 29%, while the overall rate of increase of waivers granted was less than 2%.

While this data is relevant to our inquiry, we would echo the *Eldridge* Court's warning against reliance on "bare statistics," 424 U.S. at 346–47, 96 S.Ct. 893, and do not find this information controlling in this case.

**12.** Under a district court order, the Secretary has had some experience with providing an informal hearing prior to a decision denying a request that recoupment be "waived." *See* note 11 *supra.* In 1977, 42,880 "waiver" requests were filed, of which 23,345 were denied

in the first instance. Of those denials, only 1,212 persons availed themselves of the right to a "personal conference" before their benefits were reduced. These figures do not show a great increase in the requests for hearings in comparison to the statistics for 1970, when 1,600 requests were made for a post-recoupment hearing for both waiver and reconsideration cases. While the 1977 figures are of course not necessarily predictive of future requests for hearings, the Secretary has not argued that this number is expected to rise. *See also Elliott v. Weinberger, supra,* 564 F.2d at 1235.

required in each. For reconsideration cases, where we found that documentary evidence was often sufficient for an accurate determination of whether an overpayment had been made, we concluded:

> Consequently, the Secretary's pre-recoupment procedures permitting written evidence and providing for an examination of written documents, when coupled with a right of a *post*-recoupment oral hearing, satisfy due process.

519 F.2d at 165. We did, however, add a caveat to this holding. Because we could not envision all of the sorts of inquiries which might be called "reconsiderations" under the regulations, we insisted that pre-recoupment oral hearing be provided when the Secretary's decision did not rest on documentary evidence, but instead involved an evaluation of the claimant's credibility. *Id.* at 165–66.

For "waiver" cases, in which we believed that credibility determinations would generally be crucial to the Secretary's decision, we held that the Secretary would generally be required to give a pre-recoupment oral hearing. We did limit the right to a prior hearing, however, to those cases in which such a requirement would serve a useful function:

> While we believe that claimants in "waiver" cases have a constitutional right to a pre-recoupment oral hearing, that right may not attach in all cases. Where a claimant in a "waiver" case raises no disputed issue of fact, or where, accepting his version of the facts as true, we could say as a matter of law that he was not entitled to retain the overpayment, then again it is hard to see how a pre-recoupment hearing would be of benefit. Thus, the constitutional requirement of a hearing may be limited to some extent by principles analogous to summary judgment in civil litigation.

*Id.* at 167 (footnote omitted).

We find that our analysis of due process in our first consideration of this case is substantially consistent with the three-factor balancing test set forth in *Eldridge.* *Accord Elliott v. Weinberger, supra.*

■ We believe that the plaintiff's private interest in having a pre-recoupment hearing, particularly in "waiver" cases, is somewhat greater than that which was before the Supreme Court in *Eldridge,* and that the government's interest in delaying the hearing is somewhat less. The most substantial difference between the recoupment procedure and the termination of disability is the value of a prior hearing to the fact-finding which the Secretary must perform. Generally, reconsideration cases may adequately be determined on the basis of documentary evidence, while generally we believe that a hearing is the only adequate proceeding for determination of a "waiver" case.

We hold that when the claimant has filed only for reconsideration, the balance of the three factors yields the same result as was reached in *Eldridge*—that a post-recoupment hearing will suffice. We adhere to our former opinion regarding reconsideration cases except in one respect. In the prior opinion, we said that if a reconsideration case should arise which rested on credibility evidence, a hearing would be constitutionally required. We do not believe that this qualification is consistent with *Eldridge,* which declares that procedural due process is to be shaped according to "the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions." 424 U.S at 344, 96 S.Ct. at 907.

When the recipient claims a "waiver," i. e. that the Secretary is barred from recouping an overpayment by section 204(b), we adhere fully to our prior decision. Because of the similarity of the "waiver" inquiry to that considered by the Supreme Court in *Goldberg v. Kelly, supra,* and in light of the analysis of the *Eldridge* decision, we hold that the due process clause requires a pre-recoupment oral hearing when a recipient has filed a legally sufficient claim of entitlement to "waiver" of recoupment under section 204(b).

■ To the extent that a hearing is required, we do not believe that a full judicial

or quasi-judicial proceeding is necessary. A court must be flexible in fitting procedural requirements to the circumstances of a case. *Board of Curators v. Horowitz, supra,* 435 U.S. at 78, 98 S.Ct. 948; *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). After considering all factors under the analysis in *Eldridge,* we find that an informal oral hearing will provide adequate safeguards to recipients of Title II benefits who are subject to recoupment. We adhere fully to the minimum standards for such a hearing which we described in our earlier opinion:

> We therefore believe that due process requires only an informal, oral hearing which provides the following safeguards:
>
> 1) an impartial decision maker separated from those making the previous administrative determinations in the case;
>
> 2) timely and adequate notice to the recipient of the reasons for recoupment;
>
> 3) an effective opportunity for the recipient to confront and cross-examine adverse witnesses;
>
> 4) an effective opportunity for the recipient to present his own argument and evidence orally;
>
> 5) an opportunity to retain counsel or have the informal assistance of a friend, if the recipient desires;
>
> 6) a report written by the decision maker which informally states the reasons and the evidence relied on in reaching his decision;
>
> 7) an opportunity for all parties to receive and challenge the decision maker's report before it becomes final.

519 F.2d at 168–69 (footnotes omitted). *Accord Elliott v. Weinberger, supra,* 564 F.2d at 1235; *see Goldberg v. Kelly, supra,* 397 U.S. at 267–71, 95 S.Ct. 1011.

## V. CLASS ACTION

The district court denied plaintiff's motion for a class action. The only reason indicated for its departure from its certification of the class in its first consideration of the case, 377 F.Supp. at 915–916, was a citation to *Weinberger v. Salfi, supra.* Apparently the court was concerned over the compatibility of a class action with jurisdiction under section 205(g) of the Act, 42 U.S.C. § 405(g).

In *Liberty Alliance of the Blind v. Califano, supra,* which was decided after the trial judge's consideration of this case, we indicated that a class action could be maintained under section 205(g). Since we will reverse and remand this case, the district court should reconsider class certification in light of *Liberty Alliance. See also Johnson v. Mathews, supra; Caswell v. Califano, supra.*

The judgment of the district court will be reversed and the case remanded for further proceedings consistent with this opinion.