| | |
|---|---|
| Mac R. Perlman (43 shares × $2,849.85) | $122,543.55 |
| Alan J. Pearlman (4 shares × $2,849.85) | $ 11,399.40 |
| Sylvia Perlman (1 share × $2,849.85); | $ 2,849.85 |

(4) Defendants shall pay the above amounts to the plaintiffs within 60 days after entry of this judgment by the Clerk of the Court, which payment shall be made against delivery to the defendants of the plaintiffs' Midland stock certificates, duly endorsed for transfer;

(5) Each party shall bear its own costs in this matter.

**Ramon RIVERA, et al., Plaintiffs,**

v.

**Margaret HECKLER,\* etc., et al., Defendants.**

Civ. No. 82–3331.

United States District Court, D. New Jersey.

June 29, 1983.

ty or argument and therefore is found to be meritless.

\* Margaret Heckler, the current Secretary of Health & Human Services, is substituted for Richard Schweiker pursuant to Fed.R.Civ.P. 25(d)(1).

Stephen M. Latimer, Legal Services of New Jersey, Inc., New Brunswick, N.J., R. Michael Kemler, Dept. of the Public Advocate, Trenton, N.J., for plaintiffs.

Jerome B. Simandle, Asst. U.S. Atty., Michael S. Bokar, Deputy Atty. Gen., Trenton, N.J., for defendants.

## OPINION

LACEY, District Judge.

Before the court are: defendants' motions to dismiss for lack of subject matter jurisdiction and for non-justiciability; William Fitzpatrick's motion to intervene as a plaintiff; and plaintiffs' motion to certify a class.

### Background

Plaintiffs are present and former recipients of Social Security disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–33, 1381–85 (hereinafter "the Act"). They bring this action on their own behalf and as representatives of a putative class of all persons similarly situated. Plaintiffs challenge defendants' use of criteria for evaluating disability claims that allegedly are inconsonant with the definition of disability established in the Act, as interpreted by the federal courts. Plaintiffs claim that defendants' refusal to follow judicial precedent violates their right to due process of law.

Social Security disability determinations are governed by procedures coordinated by the state and federal governments. In New Jersey, claims initially are referred to the state Division of Disability Determinations (DDD) for review. If the claim is denied, a claimant may request reconsideration by DDD. If that is denied, a claimant may request a hearing before an Administrative Law Judge (ALJ). 42 U.S.C. § 421(d); 20 C.F.R. §§ 404.930, 416.1429. The ALJ's decision may be appealed to the Social Security Administration (SSA) Appeals Council, 20 C.F.R. §§ 404.967, 416.1467, and, thereafter, a claimant may pursue his remedies in the federal courts. 42 U.S.C. §§ 405(g), 1383(c)(3).

A favorable decision at any stage entitles the claimant to benefits. Eligibility, however, continues only so long as the disability exists. 20 C.F.R. §§ 404.1590, 416.990. Each successful claim is subject to a "continuing disability investigation" (CDI), to occur at least once every three years. 42 U.S.C. § 421(i) [§ 421(h)]. If a claimant is found to be no longer eligible, benefits may be terminated.

The review process for initial determinations also applies to determinations of continuing eligibility. Prior to the 1983 amendments to the Act, Pub.L. No. 97–455, 96 Stat. 2497 (1983), benefits were suspended after the initial decision to terminate and could be recouped only by appeal. Now, however, terminated claimants have an option of continuing benefits until an ALJ reviews the state agency's determination. If the ALJ affirms, the continued benefits will be considered overpayments subject to recoupment at the discretion of the Secretary of Health & Human Services (Secretary).[1]

The New Jersey DDD initially awarded benefits to all the named plaintiffs and then terminated these benefits. Plaintiffs designated as "Group A" subsequently have had their benefits reinstated after a hearing before an ALJ. Some in Group A have twice repeated the cycle of award, termination, and reinstatement. "Group B" plaintiffs have not yet had their terminations passed on by an ALJ. Eight of the nine named plaintiffs are now in Group A, having had their benefits restored. The ninth, Theresa Fabricatore, is a Group B plaintiff who has not yet had a hearing before an ALJ.

---

1. This provision is effective with respect to termination decisions made by state agencies between January 12, 1983, the date of the amendments, and October 1983. Public Law No. 97–455 expires in June 1984.

Plaintiffs primarily challenge the Secretary and DDD's alleged refusal to adhere to Third Circuit precedent. Plaintiffs allege that in evaluating disability claims DDD is directed to follow, *inter alia,* guidelines contained in the Secretary's Program Operating Manual System (POMS). These allegedly reflect the Secretary's policy of nonacquiescence in controlling judicial precedent.[2] ALJs, who are not guided by the directives in the POMS, on the other hand, follow the law as announced by the circuit court. Plaintiffs allege that this inconsistent procedure and more particularly defendants' refusal to follow controlling caselaw subjects the plaintiffs to needless administrative review and, over time, to "administrative looping."

Plaintiffs identify two principal conflicts between the standards applied by DDD and the law of this circuit. First, and contrary to Third Circuit precedent, *see, e.g., Smith v. Schweiker,* 671 F.2d 789, 792–93 (3d Cir. 1982); *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981), DDD allegedly refuses to give substantial weight to the opinion of a claimant's treating physician, even when this opinion is uncontradicted by substantial evidence.

Second, plaintiffs allege that DDD gives inadequate weight to claimant's subjective complaints of pain and therefore will not find a claimant to be disabled on the basis of subjective complaints alone. According to the Third Circuit, pain alone may be disabling. *See, e.g., Smith v. Califano,* 637 F.2d 968, 972 (3d Cir.1981).

Plaintiffs seek declaratory and injunctive relief directed toward having the Secretary promulgate regulations for evaluating disability that accord with federal precedent.[3]

*Subject Matter Jurisdiction*

### 1. Federal Defendants

Defendants Heckler and John Svahn, Commissioner of the SSA, move to dismiss for lack of subject matter jurisdiction. Jurisdiction with respect to Group A plaintiffs (and their putative class) is premised on 28 U.S.C. § 1361 and, with respect to Group B plaintiffs (and their putative class), on 42 U.S.C. §§ 405(g) and 1383(c)(3) as well as on § 1361. We will first consider the Group B plaintiffs, those persons whose benefits have been terminated but whose terminations have not been ruled on by an ALJ.

■ 42 U.S.C. § 405(g) provides for judicial review "after any final decision of the Secretary made after a hearing to which ... [the claimant] was a party...."[4] The "final decision" requirement has two elements, one nonwaivable, the other waiva-

---

**2.** Under the so-called nonacquiescence policy, the Secretary considers a circuit (or district) court decision binding only in the specific case it decides. The Secretary does not believe that the Social Security Administration is bound by *stare decisis* to follow circuit court precedent. DDD, therefore, is directed to make eligibility decisions based solely on the Act and the Social Security Regulations set forth in the Code of Federal Regulations, regardless of the holdings in the relevant caselaw. *See Hillhouse v. Harris,* 547 F.Supp. 88, 91–92 (W.D.Ark.1982).

**3.** More specifically, plaintiffs seek a judgment: 1. Declaring federal defendants' guidelines and policies requiring DDD to ignore federal judicial precedent in violation of the United States Constitution and ordering federal defendants to promulgate regulations, guidelines, and policies that mandate adherence to federal judicial precedent; 2. Declaring illegal defendants' policies and practices in reviewing continuing disability benefits that fail to determine disability in accord with the clear weight of the evidence; that fail to accord appropriate weight to medical evidence furnished by treating physicians; and that fail to accord appropriate weight to subjective evidence of pain; 3. Entering a permanent injunction ordering defendants to promulgate certain regulations; 4. Declaring federal defendants' differing standards for state-level determinations and administrative determinations at the federal level in violation of both the United States Constitution and the Social Security Act, and ordering defendants to develop a system of regulations, guidelines, and policies that provide uniformity of standards and practices at all levels; 5. Awarding such other relief as is just, proper and equitable; and 6. Awarding costs and attorneys' fees.

**4.** 42 U.S.C. § 1383(c)(3) expressly incorporates § 405(g). Judicial review of disability determinations will therefore simply be referred to as review pursuant to § 405(g).

ble. The nonwaivable requirement is that the plaintiff have presented a claim for benefits to the Secretary. The waivable requirement is that that plaintiff have exhausted the administrative review procedures prescribed by the Secretary. The exhaustion requirement may be waived either by the Secretary or, under appropriate circumstances, by the court on its own determination. *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976); *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333, 344 (3d Cir.1977); see *Weinberger v. Salfi,* 422 U.S. 749, 763–64, 95 S.Ct. 2457, 2465–66, 45 L.Ed.2d 522 (1975).

Clearly, by filing a claim with the Secretary, Theresa Fabricatore has satisfied § 405(g)'s nonwaivable element. Equally clearly, she has not exhausted her administrative remedies, and the Secretary has not voluntarily waived them. This court therefore has jurisdiction under § 405(g) only if it finds it appropriate to waive the exhaustion requirement.

■ The basic inquiry is whether a claimant's interest in having a particular issue resolved promptly is so great that deference to agency procedures is inappropriate. *See Mathews v. Eldridge, supra,* 424 U.S. at 330, 96 S.Ct. at 900; *Mattern v. Mathews,* 582 F.2d 248, 253 (3d Cir.1978). Waiver of exhaustion may properly be inferred when plaintiffs' legal claims are collateral to their demand for benefits, when the harm suffered in the interim would not be recompensable by retroactive relief, or when exhaustion would be a *pro forma* or futile gesture. *Smith v. Schweiker,* 709 F.2d 777 at 780 (2d Cir.1983); see *Mathews v. Eldridge, supra,* 424 U.S. at 330–31, 96 S.Ct. at 900–01; *Liberty Alliance, supra,* 568 F.2d at 344–46.[5]

Admittedly, unlike the *Eldridge* plaintiffs' claim to a right to a pretermination hearing, the claim here, involving as it does the Secretary's standards for determining disability, is not wholly divorced from any claim to entitlement to benefits. Nevertheless, we find the reasoning of the court in *Aldrich v. Schweiker,* 555 F.Supp. 1080 (D.Vt.1982), a case involving an almost identical challenge to the Secretary's nonacquiescence policy to that pressed here, apposite:

> Our adjudication of plaintiffs' claim in the instant case potentially affects their entitlement to benefits only in subsequent proceedings wholly collateral to this case. Plaintiffs' claim is, therefore, 'procedural' in the sense that, rather than being for recovery of benefits, it is for adjustment of the rules for determining whether an individual is entitled to benefits.

*Id.* at 1089. *See also Ringer v. Schweiker,* 684 F.2d 643, 645–46 (9th Cir.1982); *Schisler v. Schweiker,* Civ. 80–527E, slip op. at 5–6 (W.D.N.Y. August 11, 1981).

Claimants whose benefits are terminated are, under the 1983 amendments, entitled to continued benefits pending the outcome of their administrative appeal, subject to recoupment. These amendments, however, expire in 1984. More importantly, claimants' poverty and disability make them economically and psychologically vulnerable to any delay in recovery of benefits and to the uncertainty generated by termination of benefits. The stress imposed by an exhaustion requirement is particularly acute when there is a repeated cycle of grant, denial, and reinstatement, even if payments are not delayed while an appeal is pending.

Finally, and perhaps most significantly, exhaustion of administrative remedies

---

**5.** Contrary to defendants' contention, there is no indication that the Supreme Court intended the elements of collateralness and irreparable harm, identified in *Eldridge,* to be rigid conditions precedent to a court's waiving exhaustion. The Court rather approved a practical approach to determining whether waiver of exhaustion is appropriate, focusing on the balance between the plaintiff's interest in prompt resolution and the general principle that agency procedures should be permitted to run their course. *Fitzgerald v. Schweiker,* 538 F.Supp. 992, 996–97 (D.Md.1982); see *Mathews v. Eldridge, supra,* 424 U.S. at 331 n. 11, 96 S.Ct. at 901 n. 11. The Third Circuit's ruling on waiver of exhaustion in *Liberty Alliance, supra,* focusing on the question of futility, reflects this practical approach to the question.

would here serve no useful purpose. In *Weinberger v. Salfi, supra,* the Supreme Court described administrative purposes that justify exhaustion:

> Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.... Once a benefit applicant has presented his or her claim at a sufficiently high level of review to satisfy the Secretary's administrative resources unsupported by any administrative or judicial interest.

422 U.S. at 765–66, 95 S.Ct. at 2466–67.

■ The "inutility of exhausting administrative remedies on a legal issue on which the Secretary has had an ample opportunity to take a definitive position, and indeed has done so, applies equally to multiple claimants presenting an identical legal issue." *Liberty Alliance, supra,* 568 F.2d at 345. Exhaustion is not required when the Secretary has taken a final position on the issue in question. *Id.* at 346; *accord Jones v. Califano,* 576 F.2d 12, 20–21 (2d Cir.1978).

■ Adherence to a position of nonacquiescence to judicial precedent, even in the face of consistent reversal by ALJs, firmly evidences that the Secretary has taken a final position and is unwilling to change. *See Wheeler v. Schweiker,* 547 F.Supp. 599, 605–06 (D.Vt.1982); *Fitzgerald v. Schweiker,* 538 F.Supp. 992, 998 (D.Md.1982); *Morrison v. Schweiker,* No. C82–888V (W.D. Wash. Jan. 7, 1983).

When, as here, it is alleged that DDD is forcing claimants to pursue lengthy administrative appeals because the Secretary persists in promulgating standards for eligibility that are contrary to the law of the circuit, requiring exhaustion serves no useful function. *See Aldrich v. Schweiker,* su-

pra, 555 F.Supp. at 1088; *Morrison v. Schweiker, supra.*

The Second Circuit's recent decision in *Smith v. Schweiker,* 709 F.2d 777, (2d Cir. 1983), lends support to this conclusion and answers defendants' charge that unsuccessful claimants could always cast their claims as one challenging the Secretary's standards and thereby justify waiver of exhaustion. Plaintiffs in *Smith* challenged the Secretary's failure to use a "medical improvement" standard when assessing continuing eligibility for benefits.[6] The Second Circuit found that waiver of exhaustion was not appropriate in the circumstances. In doing so, however, the court distinguished *Jones v. Califano, supra,* in which the Second Circuit waived exhaustion, as follows:

> At issue in *Jones* was the Secretary's continued adherence to a legal standard which had been repeatedly rejected by the Appeals Council. Claimants faced by a routine denial by the Secretary were thus forced to take claims to the Appeals Council which in turn would routinely reverse. Under these circumstances, concededly "needy" individuals for whom "time is a precious commodity" might obtain the higher level of benefits only by prosecuting their claims three rungs up the administrative ladder to the Appeals Council. *Id.* at 20. While they were ultimately successful, that very success prevented them from obtaining judicial review of the standard initially applied by the Secretary. Thus, the harm suffered, "the evasion of review," and "the at least colorable constitutional violations of due process and equal protection," *id.* at 21, persuaded the court to "assimilate the posture of the claimant Jones ... to the posture of the claimant Eldridge," *id.*

Unlike *Jones,* there is no internal disarray within the Social Security Administration in the present case.

Weiner, like the Second Circuit in *Smith,* declined to waive exhaustion.

---

**6.** This was also plaintiffs' principal complaint in *Kuehner v. Schweiker,* 547 F.Supp. 49 (E.D. Pa.1982), cited by defendants here. Judge

At 781.[7]

The case *sub judice* also involves not simply the standards used by the Secretary but an alleged "disarray" within the Social Security Administration. Waiver of exhaustion is therefore warranted. This is particularly so since it is unrealistic to expect that the SSA would consider changing its alleged nonacquiescence policy at the behest of a single claimant in the context of a routine appeal from an adverse agency decision. *See Mathews v. Eldridge, supra,* 424 U.S. at 330, 96 S.Ct. at 900.[8] Moreover, a contrary result would permit inequality of treatment as between those who appealed termination decisions and those who did not.

For the foregoing reasons, the exhaustion requirement is waived. Accordingly, this court has jurisdiction over Group B's claims against the federal defendants under § 405(g). It therefore is unnecessary to decide whether we have mandamus jurisdiction over Group B's claims.

■ The same cannot be said of Group A's claims, however. Group A plaintiffs have had their terminated benefits reinstated and are now receiving benefits. A condition for jurisdiction under § 405(g) is that the Secretary has made a determination adverse to the claimant. *See Ellis v. Blum,* 643 F.2d 68, 77 (2d Cir.1981); *Jones v. Califano, supra,* 576 F.2d at 18; *Aldrich v. Schweiker, supra,* 555 F.Supp. at 1088. Since the Group A plaintiffs have no outstanding claims the denial of which this court can review, we lack jurisdiction under § 405(g).

■ The Group A plaintiffs contend that this court has mandamus jurisdiction over their claims against the federal defendants under 28 U.S.C. § 1361.[9] An initial question is whether 42 U.S.C. § 405(h) forecloses mandamus jurisdiction in Social Security cases.

42 U.S.C. § 405(h) provides, in relevant part:

No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

In *Ellis v. Blum, supra,* Judge Friendly, in an extensive and cogent opinion, concluded that § 405(h) does not preclude assertion of § 1361 jurisdiction over claims essentially procedural in nature. 643 F.2d at 73–75, 77–82. Other courts agree. *See, e.g., Elliott v. Weinberger,* 564 F.2d 1219, 1225–27 (9th Cir.1977), *aff'd in part on other grounds sub nom. Califano v. Yamanski,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); *Ryan v. Shea,* 525 F.2d 268 (10th Cir.1975); *Dixon v. Quern,* 537 F.Supp. 990, 991–92 (N.D.Ill.1982) (following *Ellis v. Blum*); *Trujillo v. Schweiker,* 558 F.Supp. 1058, 1062 (D.Colo.1983) (dictum). This court does as well.

■ This court has previously stated its view that plaintiffs' claims are "essentially," if not wholly, procedural in nature. Plaintiffs do not seek a judgment that they are entitled to benefits. Indeed, since Group A plaintiffs are presently receiving

---

7. Similarly, in *Mercer v. Birchman,* 700 F.2d 828 (2d Cir.1983), also cited by defendants, the court, in declining to waive exhaustion, said, *inter alia,* "no conflict between the established procedures of cooperating agencies as in *Ellis v. Blum* [643 F.2d 68 (2d Cir.1981)] rendered illusory the prospect of an administrative remedy to the wrongs these plaintiffs allege so as to justify resort to the courts before exhaustion." *Id.* at 832.

8. *D'Amico v. Schweiker,* 698 F.Supp. 903 (7th Cir. 1983), cited by defendants, is neither to the contrary nor apposite. *D'Amico* is a standing

case: the court dismissed because the ALJs who brought the action were not the proper plaintiffs to challenge a newly enacted uniform standard. This decision has little application to the present case.

9. Added by the Mandamus and Venue Act of 1962, 28 U.S.C. § 1361 provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

benefits, there is no possibility that an award of benefits could be granted in this law suit. Theirs is not an action to "recover on any claim arising under" Title II. *See Ellis v. Blum, supra,* 643 F.2d at 82. Plaintiffs bring a constitutional challenge to the procedures defendants use to make disability determinations, particularly the alleged policy of nonacquiescence. Accordingly, § 405(h) does not preclude mandamus jurisdiction over the Group A plaintiffs' claims against the federal defendants. *See Aldrich v. Schweiker, supra,* 555 F.Supp. at 1089; *Morrison v. Schweiker, supra.*

■ For a writ of mandamus to issue, there must be a clear right in the plaintiff to the relief sought, a clear duty on the part of the defendant to act, and no other adequate remedy available. *See United States v. Ferri,* 686 F.2d 147, 152–53 (3d Cir.1982); *DeMasi v. Weiss,* 669 F.2d 114, 116–17 (3d Cir.1982); *Mattern v. Weinberger,* 519 F.2d 150, 156 (3d Cir.1975), *cert. denied,* 443 U.S. 912, 99 S.Ct. 3101, 61 L.Ed.2d 876 (1979).

■ Plaintiffs contend that the fifth amendment to the Constitution requires the Secretary to adhere to controlling judicial precedent. We find this claim more than colorable. *See Jones & Laughlin Steel v. Marshall,* 636 F.2d 32 (3d Cir.1980); *Allegheny General Hospital v. NLRB,* 608 F.2d 965, 970 (3d Cir.1979); *Siedlicki v. Schweiker,* C82–61R, slip op. at 6–12 (W.D.Wash. Jan. 28, 1983). In any event, mandamus jurisdiction lies both to determine the constitutional requirements applicable to SSA procedures and to compel compliance with such requirements. *See Mattern v. Weinberger, supra,* 519 F.2d at 157; *Knuckles v. Weinberger,* 511 F.2d 1221, 1222 (9th Cir. 1975); *Soberal-Perez v. Schweiker,* 549 F.Supp. 1164, 1170 (E.D.N.Y.1982); *Dixon v. Quern, supra,* 537 F.Supp. at 992.

■ Group A plaintiffs have no alternative means now to obtain the desired relief. Accordingly, this court finds that it has mandamus jurisdiction over the Group A plaintiffs' claims against the federal defendants.

### 2. State Defendants

■ Roger ˙ Bodman, Commissioner of the New Jersey Department of Labor, and Marie Blackwell, Director of the Division of Disability Determinations, the state defendants, also have moved to dismiss. Plaintiffs premise jurisdiction over the state defendants on 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

Plaintiffs allege not that the state defendants' wrong is their misapplication of the Secretary's regulations but, rather, their adherence to the Secretary's nonacquiescence directive. In *Ellis v. Blum,* the Second Circuit observed:

On its face § 405(h)'s ban on actions "against the United States, the Secretary, or any officer or employee thereof" does not apply to a suit against state officials. However, a forceful argument can be made that the state officials administering the disability-benefits program are acting under color of federal law as mere agents of the Secretary, and as such are within the ambit of § 405(h). To hold otherwise arguably would invite applicants for Title II benefits to circumvent §§ 405(g) and (h) by bringing suit under § 1331 against the state officials instead of the Secretary, particularly now that the amount-in-controversy requirement of § 1331 has been eliminated as to all defendants.

643 F.2d at 76. We find this logic persuasive. Since plaintiffs' dispute is with the Secretary, § 405(h) bars jurisdiction over the state defendants under § 1331.

In *Smith v. Schweiker, supra,* the Second Circuit found there was no jurisdiction under 28 U.S.C. § 1343 because the "state defendant's allegedly illegal acts were unquestionably taken pursuant to federal, not state, law." At 780. We find the same to be true here.

Accordingly, the claims against the state defendants must be dismissed for lack of subject matter jurisdiction.

### Mootness & Prematurity

■ Defendants contend that since the Group A plaintiffs' benefits have been rein-

stated their claims are moot. We disagree, finding plaintiffs' claims to be capable of repetition yet otherwise evading review. *See generally Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1974); *Sosna v. Iowa*, 419 U.S. 393, 402, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1975).

Plaintiffs are subject to a continuing disability investigation at least once every three years. According to the allegations of the complaint, by which we must be guided, these reviews are conducted pursuant to an established policy of nonacquiescence, resulting in erroneous terminations of benefits. These plaintiffs can reasonably expect again to be subjected to defendants' alleged wrongful conduct.

The time required for administrative review of disability and SSI benefit determinations is, for these purposes, relatively brief, commonly measured in months. Indeed, eight of the nine named plaintiffs have had their benefits restored since October 7, 1982. Given the pace of federal judicial proceedings, it is unlikely that plaintiffs could have litigated their constitutional claims within this period. *See Darby v. Schweiker*, 555 F.Supp. 285, 289–90 (E.D.Pa.1983); *Schisler v. Schweiker, supra*, slip op. at 8–9. If restoration of benefits mooted plaintiffs' claims, defendants' actions would evade review. Accordingly, we find this action is not moot as to the Group A plaintiffs.

■ Defendants also contend that the Group B plaintiff's claims are not ripe. This confirms the analysis just rendered: Group A plaintiffs' claims are unreviewable because moot, but Group B plaintiff's claims are unreviewable because premature. Adopting defendants' argument would effectively preclude judicial relief.

In any case, defendants' ripeness argument is essentially the exhaustion of remedies argument in another garb. We have already indicated our view that plaintiff's claims are essentially procedural in nature and that exhaustion is not here required. Defendants contend that until they actually apply their standards to particular cases, adjudication is premature. This ignores the complaint's allegations that defendants' review is conducted pursuant to an established policy. Group B's claims state a sufficiently concrete controversy to be justiciable.

■ Finally, defendants argue that plaintiffs lack a personal stake in the litigation. Since the 1983 amendments ensure that, upon termination by DDD, benefits continue through the appeals process, defendants contend that plaintiffs suffer no injury in fact. The uncertainty caused by the allegedly erroneous terminations, however, amounts to a psychic injury independent of loss of economic benefits. Moreover, plaintiffs are subject to continuing disability investigations every three years while the law providing for continuation of benefits during appeal expires in June 1984. Plaintiffs have a personal stake in this litigation.

For the foregoing reasons, the federal defendants' motion to dismiss the action as non-justiciable is denied.

### Motion to Intervene

■ William Fitzpatrick has moved to intervene as a party plaintiff. Fitzpatrick, like the Group A plaintiffs, allegedly is a victim of "administrative looping," having been through the cycle of grant, termination, and reinstatement of benefits. On December 6, 1982, he was for a second time informed that his benefits would be terminated, effective February 1, 1983. Apparently, as with Group B, the termination has yet to be reviewed by an ALJ.

Fitzpatrick's claim raises the same questions of law as do the named plaintiffs' claims and, at this early stage in the litigation, intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. *See* Fed.R.Civ.P. 24(b). Accordingly, the motion to intervene is granted.

### Motion to Certify a Class

Plaintiffs have moved to certify this action as a class action. Defendants object.

The court must consider this question at the earliest possible stage in the litigation. Accordingly, the parties are directed to contact the court for the purpose of setting a date for a hearing on the question whether the requirements of Fed.R.Civ.P. 23 are met.

In sum, we hold as follows: defendants Heckler and Svahn's motion to dismiss for lack of subject matter jurisdiction and non-justiciability is denied; defendants Bodman and Blackwell's motion to dismiss for lack of subject matter jurisdiction is granted; and William Fitzpatrick's motion to intervene as a party plaintiff is granted. With respect to plaintiffs' motion to certify a class, the parties are directed to arrange for a hearing before this court on whether the requirements of Rule 23 are met.