116 N.J. Super. 21 (1971)
280 A.2d 838
FRANCIS X. HAYES, PLAINTIFF-APPELLANT,
v.
HUDSON COUNTY BOARD OF CHOSEN FREEHOLDERS AND CLERK OF HUDSON COUNTY, DEFENDANTS-RESPONDENTS, AND CHESTER J. WOJTYCHA, INTERVENOR.
Superior Court of New Jersey, Appellate Division.
Argued August 9, 1971.
Decided August 9, 1971.
Opinion Filed August 17, 1971.
*22 Before Judges CONFORD, LEONARD and MATTHEWS.
Mr. Francis X. Hayes, appellant, argued the cause pro se.
*23 Mr. Daniel F. Gilmore, Assistant County Counsel, argued the cause for respondents Hudson County Board of Chosen Freeholders and Clerk of Hudson County (Mr. William F. Kelly, Jr., Hudson County Counsel, attorney).
Mr. John J. Mulvihill argued the cause for respondent Chester J. Wojtycha (Messrs. Crummy, O'Neill, Del Deo & Dolan, attorneys; Mr. John T. Dolan, of counsel).
The opinion of the court was delivered by CONFORD, P.J.A.D.
The questions before us are: (a) whether there is a vacancy in the Board of Chosen Freeholders of Hudson County resulting from the conviction, on April 22, 1971, of Chester J. Wojtycha, an elected member of that body, for violation of N.J.S.A. 2A:135-8(c) (being personally interested in sale of goods to the county); (b) if there is such a vacancy should it be filled in accordance with whatever law governs the filling of vacancies on such a body notwithstanding the fact that Wojtycha has filed an appeal from the conviction which is pending in this court, and (c) is there such a law?
The trial court held that no vacancy existed because N.J.S.A. 2A:135-9, although declaring a forfeiture of office on such conviction, provides for restoration of the office in the event of reversal of the conviction.
Wojtycha was elected to the board of freeholders on November 3, 1969 for a term of three years to expire January 1, 1973. He filed his appeal from the conviction referred to on June 29, 1971. It is pending, undetermined, in this court.
N.J.S.A. 2A:135-9 reads:
Any person holding an office or position, elective or appointive, under the government of this state or of any agency or political subdivision thereof, who is convicted upon, or pleads guilty, non vult or nolo contendere to, an indictment, accusation or complaint charging him with the commission of a misdemeanor or high misdemeanor touching the administration of his office or position, or which involves *24 moral turpitude, shall forfeit his office or position and cease to hold it from the date of his conviction or entry of plea.
If the conviction of such officer be reversed, he shall be restored to his office or position with all the rights and emoluments thereof from the date of the forfeiture.
All parties herein agree that a violation of N.J.S.A. 2A:135-8(c), which constitutes a misdemeanor, is an offense "touching the administration of his office" by the person convicted thereof, for purposes of N.J.S.A. 2A:135-9.
Also material to the disposition of this appeal are the provisions of N.J.S.A. 40:20-4 (applicable to first class counties, of which Hudson is one).[1] That section reads:
Vacancies in the board of chosen freeholders caused by death, resignation or inability to serve in office shall be filled by the remaining members of the board until the annual stated meeting of the board next after the vacancy occurs, and at the first general election held after the vacancy occurs a person shall be elected to fill the office for the unexpired term only.
Plaintiff, a citizen-taxpayer of Hudson County, argues that N.J.S.A. 2A:135-9 should be applied literally; that it expressly declares a forfeiture of office as of the date of the conviction, and that a forfeiture to the incumbent necessarily works a vacancy in the office forthwith which, in the ordinary course and consonant with sound public policy, should be filled by the processes of law. He further contends that the foregoing conclusions are not negated by the provision in the statute for restoration of the office to the person convicted in the event of reversal of the conviction; *25 that this merely entails a termination of the incumbency of the successor in the stated event, in the absence of which he holds for such term as is prescribed by the applicable statute.
The trial court and defendants basically take the position that the contingency of restoration makes it unreasonable to infer a legislative intent for an ad interim vacancy in the office and that a species of suspension of the office pending the outcome of all appeals is more likely what the Legislature intended. The court anticipated the likelihood of "chaos" and "an intolerable situation, not in the public interest" should a successor be appointed or elected and thereafter a reversal of the conviction take place.
There is no reported precedent in this State for resolution of the dispute. Nor is there any out-of-state decision in point. There are many cases in other jurisdictions holding that the effect of a constitutional or statutory provision vacating or forfeiting a public office upon a criminal conviction of the incumbent is not abated or stayed pending the event of an instituted appeal from the conviction. See Annotation, 71 A.L.R.2d 593, 599-602 (1960). But none of these cases involved a statute restoring the office to the incumbent in the event of reversal of the conviction. State ex rel. Guthrie v. Chapman, 187 Wash. 327, 60 P.2d 245 (Sup. Ct. 1936), held the reversal of the conviction would not work a restoration to office as a matter of common law. In Becker v. Green County, 176 Wis. 120, 184 N.W. 715 (Sup. Ct. 1922), the court held a restorative statute enacted between conviction and reversal to be only prospective and not to authorize recovery of the interim emoluments of the office.
While a few cases have held the institution of an appeal effective to abate the effect of a forfeiture statute, these, for the most part, are distinguishable by virtue of special statutory language thought by the courts to mandate such results, See Annotation, 71 A.L.R.2d, supra, at 603-605.
*26 Although, as indicated, the cases representative of the majority rule on the ineffectiveness of an appeal to stay the operative effect of a conviction as creating an instant vacancy, are distinguishable from the case before us, their rationale is not entirely without present significance.
As stated in People ex rel. Keenan v. McGuane, 13 Ill.2d 520, 150 N.E.2d 168, 177 (Sup. Ct. 1958):
These decisions are generally predicated upon the theory that after a plea or verdict of guilty, judgment, and sentence by a court of competent jurisdiction, the presumption of innocence which, up to that time, had persisted in favor of the defendant, no longer prevails, and that the law thereafter presumes that the proceedings have been regular and that the defendant is guilty.
The court further declared (150 N.E.2d, at 177-178):
Respect for the law and confidence in public officers cannot be compelled. These attributes stand as a voluntary tribute to just laws and integrity in public office. While they exist, both the law and the official will retain public trust. Confidence in an elective official is destroyed when he is convicted of an infamous crime. * * * While neither the constitution nor the statutes effecting its purpose define the term "conviction," yet respect for the law and deference to the transcendent trust placed in public officials requires that such officer forfeit his office after the presumption of his innocence is disspelled by conviction of an infamous crime in a trial court.
It seems to us that the foregoing expressions are fully applicable in this State and that the approach therein explains the use by the Legislature of the term "forfeit" and the designation of the date of conviction as the effective date of such forfeiture of office in the statute before us for construction. Our cases aptly treat the concepts of forfeiture of office and consequential vacancy therein as correlative. See Kobylarz v. Mercer, 130 N.J.L. 44, 46, 47 (E. & A. 1946). "An office is vacant whenever it is unoccupied by one who has the legal right to hold it and exercise the powers and perform the duties pertaining thereto." Paull v. *27 Pierce, 68 N.J. Super. 521, 528 (Law Div. 1961), and cases cited. The latter portion of the quoted excerpt appropriately describes the status of Wojtycha under the statute immediately upon the conviction and since then to the present time.
If, as we believe to be the case (see infra), the vacancy in the office is one which ordinarily would be subject to filling by appointment by the board of freeholders of a successor until January 1, 1972 and the election of a new freeholder in November 1971 for the remainder of Wojtycha's term, the statutory provision for restoration of the office to Wojtycha in the event of reversal should not militate against the hypothesized course in this case. It is eminently in the public interest that there be no extended vacuum in a public office. The people of Hudson County are entitled to administration of county government at all times by nine freeholders. If, in the present case, four or five of the freeholders had been convicted rather than one, application of the rule pronounced in the Law Division would have crippled county government until final exhaustion of all available appellate remedies in all courts possessing jurisdiction to reverse. In principle, the same rule of statutory construction must apply whether the vacancies involved are one or several. Exhaustion of all appellate remedies, state and federal, can potentially take years in a given case, and the legislative intent must be appraised against the context of the hard case, not the easy one.
Application of the literal terms of N.J.S.A. 2A:135-9, in pari materia with those of N.J.S.A. 40:20-4, would not create any "intolerable situation" such as feared by the trial judge. The board of freeholders would appoint a person to serve until January 1, 1972 (the next annual stated meeting of the board), and the people would elect a successor to serve from January 1, 1972 until the expiration of Wojtycha's term. If prior thereto the conviction were reversed, the incumbency of either successor would automatically terminate and Wojtycha's title to the office would *28 revest.[2] If the latter postulate be argued to cut down the term of the successor as fixed by N.J.S.A. 40:20-4, the answer is simply that the process of reading the two enactments together and searching for a congruent result yields the stated conclusion. Assured thereby are both public policy objectives  keeping a public office filled and doing justice to an unjustly convicted official.
We have finally to consider whether the case of the convicted freeholder comes within the scope of "vacanc[y] caused by * * * inability to serve in office," for purposes of N.J.S.A. 40:20-4. The provision is literally applicable if the language is understood in a colloquial sense. One whose office is forfeited is obviously unable to serve. That the primary intent of the Legislature in the use of the stated language may have been the case of physical or mental incapacity to serve should not derogate from the appropriateness of judicial elasticity in construing the phrase where the employment of the statute in such a case as this is so obviously in the public interest and no other statute cited to the court provides for any mechanism of replacement of a freeholder whose office has become vacated by forfeiture; cf. N.J.S.A. 19:3-25 (even where reversal of the conviction never eventuates). We thus conclude that the procedures specified by N.J.S.A. 40:20-4 are to be followed in the present instance. We hold, moreover, that in the event of a reversal of the Wojtycha conviction prior to the end of his original term he will automatically be revested in the office, the term of any interim successor, appointive or elective, coming to an end at the same time.
Reversed and remanded for entry forthwith of a judgment conformable with the directions in this opinion. No costs.
NOTES
[1] Cf. N.J.S.A. 19:3-29 which provides that "a vacancy happening" in public offices other than the state or national legislatures shall be filled at the general election next succeeding the vacancy unless the vacancy occurs within 37 days prior to the election in which event it is to be filled at the second general election next succeeding. But since such a vacancy is qualified by the limitations of N.J.S.A. 19:3-25, none of which apply here, N.J.S.A. 19:3-29 is not relevant in the present case.
[2] We think the conclusion arrived at is not affected by the contingency that the public might have to pay for the services of two officials for the interim period between designation of the first successor and the reversal. But the intimation in De Marco v. Bd. of Chosen Freeholders of Bergen County, 21 N.J. 136, 146 (1956), is that interim pay would not have to be accorded the convicted official.