Elizabeth V. BAGBY, Plaintiff,

v.

Frank S. BEAL, Individually and in his official capacity as Secretary of the Pennsylvania Department of Public Welfare, et al., Defendants.

Civ. No. 77–758.

United States District Court,
M. D. Pennsylvania.

July 20, 1978.

As Corrected Sept. 1 and Oct. 18, 1978.

See also, D.C., 439 F.Supp. 1257.

Donald Marritz, Legal Services, Inc., Gettysburg, Pa., for plaintiff.

David Max Baer, Deputy Atty. Gen., Pa. Dept. of Justice, Harrisburg, Pa., for defendants.

OPINION

MUIR, District Judge.

## I. Introduction.

Elizabeth V. Bagby, a practical nurse licensed under the laws of the Commonwealth of Pennsylvania, (LPN) filed this action pursuant to 42 U.S.C. § 1983 alleging that the Defendants violated her constitutional rights when they suspended her for 10 days without pay from her position as an LPN I at the South Mountain Restoration Center, a geriatric restoration institution operated by the Pennsylvania Department of Public Welfare. The case was tried before the undersigned judge sitting with an advisory jury from July 10 through July 12, 1978. The Court received testimony on the liability phase of the case and, following the close of testimony, submitted four questions to the advisory jury relating to whether Defendants Donald E. Downs and Thomas F. Brubaker acted in good faith when they decided to suspend Ms. Bagby. Following the Court's findings that both Defendants acted in good faith, a finding which was also reached by the advisory jury, and that damages could not be assessed against them in their individual capacity but that Bagby's constitutional rights had been violated, the Court heard oral argument relating to the question of what equitable remedies, if any, should be awarded. The following are the court's findings of fact, discussion, and conclusions of law.

## II. Findings of Fact.

1. The Plaintiff, Elizabeth V. Bagby, is and was at all relevant times a licensed practical nurse (LPN) under the laws of the Commonwealth of Pennsylvania. Undisputed)

2. Defendant Frank S. Beal was Secretary of the Pennsylvania Department of Public Welfare (DPW) from January 6, 1975 to February 15, 1978. (Undisputed)

3. Defendant Aldo Colautti is the present Secretary of DPW, having succeeded Defendant Beal in office on or about February 16, 1978. (Undisputed)

4. Defendant Donald E. Downs is and was at all relevant times the Administrator of the South Mountain Restoration Center (South Mountain). (Undisputed)

5. Defendant Thomas F. Brubaker is and was at all relevant times the Personnel Officer at South Mountain. (Undisputed)

6. Defendant Richard A. Rosenberry was the Director of the Pennsylvania State Civil Service Commission (Commission) from November 18, 1968 to January 5, 1977. (Undisputed)

7. Defendant John E. Millett is Defendant Rosenberry's successor in office, having assumed the position and duties of Director of the Commission on or about January 6, 1977. (Undisputed)

8. Defendant John A. M. McCarthy is and was at all times relevant the Chairman of the Commission. (Undisputed)

9. Defendant Ethel S. Barnett is and was at all relevant times a Commissioner of the Commission. (Undisputed)

10. Defendant Mary D. Barnes is a Commissioner of the Commission, having assumed that position on or about December 8, 1976. (Undisputed)

11. All of the Defendants are or were officials of the Commonwealth of Pennsylvania and acted under the color of its laws and in their official capacities. (Undisputed)

12. On March 15, 1976, Plaintiff was appointed to an LPN I position in the Pennsylvania State Civil Service, probationary status, at South Mountain Restoration Center, a geriatric restoration facility under the operation and control of the Pennsylvania Department of Public Welfare. (Undisputed)

13. Plaintiff remained on probationary status for the entire period relevant to this action. (Undisputed)

14. Plaintiff was a member of the class of employees subject to and covered by a Collective Bargaining Agreement entered into between the Commonwealth of Pennsylvania and the American Federation of State, County, and Municipal Employees (AFSCME). (Undisputed)

15. On or about August 9, 1976, five of plaintiff's co-workers, Donna Thompson, Beryl Myers, Shirley Miller, Mary Ann Kneasel and Suzanna Shultz, made oral accusations against plaintiff of theft of state property.

16. Upon arriving at work at South Mountain on September 9, 1976, at or about 2:30 p.m., plaintiff was told to and did report to an office designated by Defendant Brubaker for a meeting concerning the facts surrounding allegations against her of theft of state property. (Undisputed)

17. In addition to the plaintiff, the following individuals were present at the September 9, meeting;

Mrs. Dorothy Ridge, Director of Nursing;

Mrs. Shirley Sites, R.N., Shift Supervisor;

Mrs. Shirley M. Miller, Nursing Assistant I;

Ms. Mary Anne Kneasel, Nursing Assistant I;

Mrs. Donna Thompson, Nursing Assistant I;

Mrs. Beryl R. Myers, Nursing Assistant I;

Mrs. Bonnie Marpoe, LPN I, President of AFSCME's Local # 2355

(Undisputed)

18. The meeting began at or about 2:50 p. m.

19. Plaintiff was not informed of the purpose of the meeting until she arrived at the designated office. Plaintiff's first notice of any disciplinary proceedings or charges against her was an oral notice given at said meeting.

20. Defendant Brubaker informed plaintiff that the meeting was convened to determine the facts surrounding the allegations that plaintiff had stolen state property. (Undisputed)

21. Plaintiff was informed that the meeting could result in disciplinary action against her. (Undisputed)

22. Plaintiff was informed of the precise charges of theft of state property made against her including the items she was accused of taking and, where it was known,

the precise dates she was alleged to have taken the said items.

23. All of Plaintiff's accusers were present at the meeting. (Undisputed)

24. All of plaintiff's accusers stated that they would testify under oath to the accusations articulated against Plaintiff. (Undisputed)

25. At the meeting Defendant Brubaker ask Plaintiff if she had anything to say with respect to the charges and she replied, "They are all lies."

26. Plaintiff was provided with an opportunity to present anyone she desired to adduce facts relevant to the inquiry. (Undisputed)

27. Defendant Brubaker made a report of the meeting which is a fair and accurate partial summary.

28. No individual participating in the meeting was placed under oath. (Undisputed)

29. No stenographic record was made of the meeting. (Undisputed)

30. Plaintiff was not given the opportunity to select a person to represent her at the meeting.

31. Bonnie Marpoe, president of American Federation of State, County, and Municipal Employees (AFSCME) Local 2355 was present at the meeting but did not speak on behalf of plaintiff.

32. Within 3 weeks after the meeting Plaintiff and her counsel requested to see any written statement of charges against her, but the request was denied.

33. Plaintiff and her counsel thereafter made several more requests to Defendant Downs for copies of all charges and reports made against her, which requests were consistently denied.

34. Plaintiff was not provided with a copy of Defendant Brubaker's report of September 13, 1976. (Undisputed)

35. Defendants Brubaker and Downs continued their investigation of the charges against Plaintiff after the September 9, 1976 meeting, as a result of which further evidence was produced and relied upon in their later decision to suspend Plaintiff.

36. Plaintiff was never informed of any evidence produced as a result of the investigation after the meeting.

37. The charges against Plaintiff adduced at the September 9, 1976, meeting were made known to Defendant Brubaker approximately one month before.

38. Plaintiff was provided with a Performance Evaluation Report on August 4, 1976.

39. At some time subsequent to September 9, 1976, and prior to September 17, 1976, Plaintiff requested to and did meet with Defendant Downs, at which time she was given the opportunity to and did respond to the allegations against her of which she had knowledge. (Undisputed)

40. At the above-referenced meeting, Defendant Downs did not provide Plaintiff with any additional information concerning the allegations against her. (Undisputed)

41. Plaintiff has always maintained that the charges against her are false. (Undisputed)

42. On or about September 16, 1976, three of Plaintiff's co-workers, Beryl Myers, Shirley Miller and Mary Ann Kneasel, made written charges of abusive treatment of patients against Plaintiff.

43. Defendants Brubaker and Downs had those writings in their possession or knew of the information contained therein before September 17, 1976.

44. By letters dated September 17, 1976, and September 28, 1976, Defendant Downs suspended Plaintiff for ten (10) working days without pay. (Undisputed)

45. The letter informing plaintiff of her ten-day suspension without pay (D3) contained the following paragraph:

If you are a member of a recognized bargaining unit, whether you are a member of the union or not, you may appeal this action at the third step of the Labor Agreement's Grievance Procedure; however, once an appeal is filed under the Civil Service Act, it cannot be appealed under the Labor Agreement's Grievance Procedure. (Undisputed)

46. Plaintiff's suspension was premised upon both the charges of theft of state property and abusive treatment of patients.

47. In the view of Defendant Downs, a ten-day suspension without pay is a reasonable, justifiable and lenient sanction for the charge of theft of state property.

48. Defendant Downs filed a written report of the suspension with the Pennsylvania State Civil Service Commission (Commission) on or about September 28, 1976. (Undisputed)

49. True copies of the report were also sent to the following persons and offices: DPW Office of Manpower; Carl Boyle, DPW Central Region; Local 2355 of AFSCME; the Mechanicsburg office of AFSCME; the nursing office at South Mountain. (Undisputed)

50. No restrictions were placed by the Defendant Downs on the above-referenced addresses as to their dissemination of the information contained in said report.

51. None of the Defendants have disseminated any information concerning Plaintiff's suspension to anyone other than Plaintiff's attorney and then only pursuant to his written request.

52. Plaintiff was not informed of the existence of any charges of abusive treatment of patients until Defendant Downs' letter of September 17, 1976.

53. Plaintiff was not informed of the specifics of any charges of abusive treatment of patients until October 25, 1976, when Defendant Downs outlined some but not all such charges in his letter of that date to Plaintiff's counsel.

54. Plaintiff was never given a hearing or an opportunity to be heard concerning the charges against her of abusive treatment of patients.

55. On October 6, 1976, Plaintiff appealed her suspension to the Commission, relying upon § 951(a) of the Pennsylvania State Civil Service Act (Act) which appeal was denied pursuant to an Order of the Commission. (Undisputed)

56. On October 29, 1976, Plaintiff requested that Defendants McCarthy and Barnett vacate or modify the Commission's Order denying her appeal pursuant to § 951(d) of the Act which request was denied on November 9, 1976, in a letter of that date from Defendant Rosenberry who stated that the Commission did not "choose to proceed" in the matter. (Undisputed)

57. Defendant Downs' report of the fact of and reasons for Plaintiff's suspension are public records of the Commission.

58. The Commission had no written formal or informal rules, regulations or policies concerning the inspection of its public records until very recently.

59. On March 21, 1977, Plaintiff's counsel inspected her file at the Commission, which included the report of her suspension, pursuant to a written request; the Commission has no record of such request or inspection. (Undisputed)

60. Plaintiff's employment at South Mountain was terminated effective November 2, 1976, for failure to complete her probationary period in a satisfactory manner. Her termination was not based upon the same charges for which she was suspended.

61. All Defendants at all times acted in conformity with what they believed to be the law of Pennsylvania.

62. Donald E. Downs had a reasonable good faith belief that he was entitled to perform the actions he took in connection with the suspension of Ms. Bagby in September of 1976.

63. Thomas Brubaker had a reasonable good faith belief that he was entitled to hold a hearing on the charges of theft of state property and to recommend Ms. Bagby's suspension based upon those charges and charges of abuse of patients without providing her with advance notice of the hearing or an opportunity to contest the charges relating to abuse of patients.

### III. Discussion.

During the period relevant to the determination of this action, Elizabeth Bagby

was employed as a licensed practical nurse on probationary status at the South Mountain Restoration Center. Sometime during the fifth month of her probationary period, or August, 1976, Mr. Brubaker, the personnel officer at South Mountain, became aware that some employees had made accusations against Ms. Bagby stating that she had on several occasions removed state property from the institution for her own personal use. Mr. Brubaker requested that the complaints be put in writing and approximately a month later informed Ms. Bagby when she came to work on September 9, 1976, that there would be a meeting in his office. At the meeting, he informed Ms. Bagby of the specifics of the charges and asked her if she had anything to say. Her only comment at the meeting was that all the charges were lies. Following the meeting, Ms. Bagby requested to meet with Mr. Downs, the administrator of South Mountain and did meet with him prior to September 17, 1976. The meeting lasted approximately one-half hour and following its conclusion, Mr. Downs told Ms. Bagby that he would look into the matter. Meanwhile, the same employees who had charged Ms. Bagby with theft of state property informed Mr. Brubaker that Ms. Bagby had also abused patients at various times during the performance of her duties as a licensed practical nurse. These charges were also reduced to writing and were known both to Mr. Downs and Mr. Brubaker prior to September 17, 1976. On September 17, a letter was written to Ms. Bagby informing her that she had been suspended without pay. A second letter dated September 28, 1976 written by Mr. Downs fixed the term of the suspension at 10 days. Ms. Bagby unsuccessfully attempted from the Civil Service Commission to gain a review hearing of the decision to suspend her. She claims that the failure to give her advance notice of the September 9, 1976 meeting and the failure to afford her any opportunity to rebut the charges of abuse of patients prior to her suspension was a violation of due process and that she suffered the deprivation of both a property interest protected under state law in continued employment without

suspension and a liberty interest in that the reasons for the suspension, which are of a potentially defamatory nature, were made a part of the public records of the Civil Service Commission pursuant to Pennsylvania law.

In an earlier opinion in this case, the Court determined that state probationary employees, who may not be suspended without good cause under Pennsylvania law, have a property interest in their continued employment. *Bagby v. Beal,* 439 F.Supp. 1257, 1260 (M.D.Pa.1977). There is no dispute that Ms. Bagby was such a probationary employee when she was suspended. Therefore, she did suffer the deprivation of a property interest protected by state law. In such a situation, the Court must determine as a matter of federal law what process was due her prior to the suspension and whether the process afforded to her by the state officials comported with minimum constitutional requirements.

Due process is not a fixed concept but varies according to the precise nature of the governmental function involved as well as the private interests affected by governmental action. *See DiLuigi v. Kafkalas,* 437 F.Supp. 863, 871 (M.D.Pa.1977), *citing Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Essentially, the Court must balance three factors, the interest of the individual in retaining his property interest, the value of any additional procedures in reducing the risk that the state will err in depriving the individual of his property interest, and the state's interest, including any function which it is performing in relation to the affected individual and any fiscal and administrative burden which additional procedures would entail. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18, *citing Goldberg v. Kelly,* 397 U.S. 254, 266–67, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Mattern v. Mathews,* 582 F.2d 248 at —— (3d Cir. 1978). In this case, therefore, the Court must weigh Ms. Bagby's interest in her continued employment and the receipt of wages against the Commonwealth's interest in suspending employ-

ees who may be guilty of malfeasance in office and the additional burden, if any, that a finding that due process was not satisfied by the procedures afforded Ms. Bagby in this case would place upon the state.

The minimum requirements of due process are notice of the potential basis for governmental action and an opportunity to be heard with respect to the facts underlying the action. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Whether the notice and opportunity to be heard should come before or after the deprivation of a property interest depends upon the circumstances of the individual case. In *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court held that when imposing a 10-day suspension upon high school students, absent exigent circumstances the administration was required to give such students notice and an opportunity to be heard prior to their suspension. In *Goldberg v. Kelly,* 397 U.S. 254, 266–267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Court held that a hearing must be held prior to the suspension or termination of welfare benefits in order to provide additional assurance against the improper deprivation of income. In this case, it would appear that a probationary employee of the state has at least as much interest in retaining not only his employment but his wages for whatever period the suspension may be imposed so that in a situation such as this one where the charges are known well in advance of the suspension and are not deemed to require immediate action, some pretermination procedures are required. *See Muscare v. Quinn,* 520 F.2d 1212, 1215 (7th Cir. 1975) (per curiam).

Having concluded that Ms. Bagby was entitled to due process prior to her suspension, the Court must determine whether the procedures afforded to her meet constitutional standards. The Defendants contend that the result in this case is controlled by *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), where the Court held that notice and an informal opportunity to be heard were all that were required prior to the imposition of a 10-day suspension of high school students and that the notice need not necessarily precede the informal hearing. In this case, Ms. Bagby received notice of the charges against her at the time of the hearing on September 9, 1976. However, *Goss* is distinguishable from this case because the private interests involved in *Goss* are not as weighty as those involved here. A high school student faced with a suspension loses only his right to receive educational benefits from the state for the period of the suspension. A public employee, on the other hand, is ordinarily suspended only when charges against him are more serious than those relating to high school disciplinary problems and the corresponding penalties are substantially more damaging. A suspended public employee in Ms. Bagby's situation may suffer injury to reputation, foreclosure of career opportunities, and the loss of a substantial amount of pay. It is undisputed that Ms. Bagby lost approximately $340.00 in wages as a result of the suspension imposed. This is clearly not a de minimus property deprivation. *Cf. Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Snidach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). Therefore, the Court concludes that at a minimum Ms. Bagby was entitled to notice of the charges against her sufficiently in advance of a hearing to afford her a meaningful opportunity to rebut the charges. A requirement that public employees faced with suspension must, absent unusual circumstances, receive 24 hours notice before the holding of an informal administrative hearing imposes substantially no more burden on the state than they have already undertaken in this case. The charges were known to Mr. Brubaker for approximately one month before he held the meeting. His interest in preserving the secrecy of the charges until the actual time of the meeting is far outweighed by Ms. Bagby's interest in insuring that she was not deprived of her wages for a substantial period of time on an erroneous basis. Therefore, the Court finds that a due process violation occurred in this case.

■ Additionally, the Court has found as a fact that Ms. Bagby's suspension was based not only upon the charges which were levied against her at the September 9 meeting but also upon charges of abusive treatment of patients to which she had no opportunity to respond. Defendants, citing *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), contend that if the suspension was justified for the charges of theft alone, then it is irrelevant whether Ms. Bagby received due process on the charge of abusive treatment of patients. *Mt. Healthy* did set forth a causation requirement between the alleged constitutional violation and the governmental action and held that where the high school teacher was not rehired at the end of an academic year for several reasons, one of which implicated his First Amendment rights, it was a proper defense to demonstrate that the teacher would not have been rehired without regard to his protected First Amendment communications. In this case, however, the Court has determined that Bagby did not receive due process in relation to either of the charges for which she was suspended. Therefore, a constitutional violation has been made out.

In addition to the deprivation of her property interest, Ms. Bagby has contended that under *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1970), she was deprived of her liberty interest by the action of the Defendants. It is the view of the Court that whether or not Ms. Bagby was deprived of a liberty interest need not be decided in this case. The Supreme Court, in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) stated that injury to reputation alone did not suffice to constitute deprivation of liberty interests but that there must be some other action affecting rights enjoyed by the Plaintiff in connection to the injury to his reputation. Assuming that those two prerequisites have been met in this case, it is not clear how this Court should interpret the Supreme Court's requirement that some injury to reputation be shown. Bagby has argued that the Court should borrow concepts of the Pennsylvania law of defamation with respect to both publication and the defamatory nature of their communication, so that she need not show actual injury in this case. Defendants contend that if no actual foreclosure of employment opportunities has resulted from their actions, Ms. Bagby has not suffered any loss of her liberty interest. Because the remedies which will be imposed in this case are supported by the Court's finding that Ms. Bagby was deprived of a property interest without due process of law, it is not necessary to reach the liberty interest question. *Cf. Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936).

■ In addition to Defendants Downs and Brubaker, Ms. Bagby contends that the other Defendants, members of the State Civil Service Commission, have violated her constitutional rights. At trial, she withdrew her request for damages against these Defendants in their individual capacities except with respect to the members of the Civil Service Commission who decided not to hear her appeal of her suspension. The Court has determined in this case that the due process violation occurred at South Mountain and Ms. Bagby was not given proper notice of a hearing prior to her suspension. It is the view of the Court that the State Civil Service Commission is not required by the Constitution to hear appeals from suspensions for merit factors of probationary employees and that its refusal to hear her appeal pursuant to Pennsylvania law did not violate her due process rights. Further, at least at the time of her suspension, Ms. Bagby was a member of a bargaining unit and had available to her the post-suspension hearing procedures set forth in the collective bargaining agreement between the state and the American Federation of State, County and Municipal Employees. In such a situation, the state need no afford the separate avenue of appeal in order to satisfy due process. Therefore, the only Defendants who violated Bagby's constitutional rights were Defendants Downs and Brubaker.

Finally, Defendants argue that assuming that a due process violation occurred on September 9, 1976, because Bagby was afforded an opportunity to meet with Defendant Downs prior to her suspension and discuss the charges with him, due process was satisfied. However, it is clear that in this case at the time of the meeting Mr. Downs had little or no knowledge concerning the charges against Bagby. Her accusers were not present at that meeting and there is no indication that Mr. Downs had received Mr. Brubaker's written report of the September 9, 1976 meeting or any other written charges made by Ms. Bagby's co-workers. In such a situation, Ms. Bagby was not afforded an adequate opportunity to rebut the charges against her because the state official with whom she met had no firsthand knowledge relating to the charges. This was clearly not a meaningful opportunity to be heard.

Once a constitutional violation has been made out, the Court must determine what remedies, if any, are appropriate to redress the deprivation. In this case, the Court submitted four special verdict questions to the advisory jury relating to whether Defendants Downs and Brubaker acted in good faith. After less than 30 minutes of deliberation, the jury concluded that each Defendant entertained a good faith belief that he was entitled to take the actions which he took surrounding Ms. Bagby's suspension and that such a belief was reasonable under the circumstances. The Court has made similar findings of fact. As Ms. Bagby concedes, prior to this Court's holding in *Bagby v. Beal*, 439 F.Supp. 1257 (M.D.Pa.1977), no Court had ever held that a probationary employee had a property right in continued employment without suspension under Pennsylvania law. Therefore, neither Mr. Downs nor Mr. Brubaker knew or should have known that he was violating a property interest of Ms. Bagby's in suspending her. Contrary to Ms. Bagby's assertion, neither should they have known that they potentially violated her liberty interest by making public pursuant to Pennsylvania law the reasons for her suspension. The decisions of the Supreme Court in the past eight years, including *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) and *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1970) can hardly be said to be a clear statement of the law relating to a public employee's liberty interest in connection with his reputation and employment. Neither party produced any evidence at the hearing, however, concerning whether Ms. Bagby enjoyed any constitutional rights which were well settled at the time of her suspension. Nevertheless, the Court has determined that both Defendants acted reasonably and in good faith and that because of their status as public officials, they are immune from damages pursuant to the Supreme Court's decisions in *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) and *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Therefore, the Court's decision as to relief will be limited to a determination of whether Bagby is entitled to any equitable remedies.

Bagby has requested essentially three types of relief. First, she asserts that she is entitled to her back pay for the period of suspension plus interest calculated from the date of the suspension. Second, she requests that a hearing be held in order to determine whether the charges levied against her form the basis for a proper suspension from duty. Third, she requests the Court to direct that the public record of her suspension and the reasons therefor be impounded pending the completion of administrative proceeding, and, if the proceedings terminate in her favor, be expunged. The Court will deal with these three requested forms of relief *seriatim*.

First, the Court is unable to make a determination of whether Bagby is entitled to an award of back pay at this time. At the time Bagby filed this action, an award of back pay against the Pennsylvania Department of Public Welfare would have been barred by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 669, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), held that it is the substance of the relief sought and not

whether it is termed "equitable" or "legal" that is controlling for Eleventh Amendment purposes and that any award of retroactive relief which would be paid from a state treasury is barred. In *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31, 41 (3d Cir. 1974), vacated on other grounds, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975), the Court of Appeals stated that *Edelman* should be interpreted to preclude an award of back pay against any agency of the Commonwealth of Pennsylvania, although local governmental units could not take advantage of the state's immunity. *See Farr v. Chesney,* 441 F.Supp. 127 (M.D.Pa.1977). However, subsequent to the hearing held in this case, the Supreme Court of Pennsylvania is said to have abrogated the Commonwealth's sovereign immunity. The Court has not seen a copy of the decision and is unaware of what effect it might have on the outcome of this case. Consequently, it will direct both parties to file a brief on this issue within 15 days of the date of this Opinion.

Bagby's second contention is that she is entitled to a hearing which comports with the due process clause. The holding of such a hearing in order to satisfy due process when a constitutional violation has occurred is clearly an appropriate remedy. *See, e.g., Skehan v. Board of Trustees of Bloomsburg State College,* 436 F.Supp. 657, 664 (M.D.Pa.1977). Once the Court has decided that a hearing should be held, however, it should then be determined what procedures must be followed at the hearing in order to cure the constitutional violation which occurred in this case.

Defendants contend that the Court's power to fashion relief in this case is limited to directing that a hearing be held which would comport with minimal due process requirements which the Court has found to be absent prior to Bagby's suspension in September of 1976. However, once that constitutional violation has been found to have occurred, the Court is guided by equitable principles in fashioning an appropriate decree. "Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and reconciling public and private needs." *Milliken v. Bradley,* 418 U.S. 717, 737–38, 97 S.Ct. 2749, 2761, 53 L.Ed.2d 745 (1974), *quoting Brown v. Board of Education,* 349 U.S. 294, 300, 75 S.Ct. 753, 99 L.Ed. 1083 (1955). Under § 1983, the substantive scope of relief available is a matter relating to the equitable powers of a federal court. The Courts have generally exercised broad remedial powers in such civil rights actions. *See Knecht v. Gillman,* 488 F.2d 1136, 1140 (8th Cir. 1973). The Court has both the power and the duty to fashion an effective federal remedy where federal law is violated. *Johnson v. Capital City Lodge No. 74,* 477 F.2d 601, 603 (4th Cir. 1973). The matter of devising an appropriate remedy for a deprivation of constitutional rights is addressed to the sound discretion of the trial judge. *Adams v. Miami Police Benevolent Ass'n,* 454 F.2d 1315, 1320 (5th Cir.), *cert. denied,* 409 U.S. 843, 93 S.Ct. 42, 34 L.Ed.2d 82 (1972). Therefore, the Court has the power to direct that a hearing be held which incorporates procedures not originally required by the due process clause in this case as a part of the equitable remedy imposed. Additionally, those procedures which would have afforded Ms. Bagby due process in September of 1976 may not suffice to do so today because, for example, she would no longer be able to obtain review of a pre-suspension hearing under the collective bargaining agreement since she is not a member of a bargaining unit. In fashioning such a decree, the Court in no way implicates that the procedures which it will impose in this case are necessary for pre-suspension hearings of probationary employees. Rather, because of the unusual circumstances in this case, something more than those normal procedures are required in order to redress the constitutional wrong which Ms. Bagby has suffered.

The Court has held that at least 24 hours advance notice of a pre-suspension hearing must be supplied to a probationary employee absent unusual circumstances. No other constitutional violation occurred in this case because a hearing was held, Ms.

Bagby was afforded an opportunity to respond to the charge, her accusers were present, and Ms. Bagby could, if she desired, confront and cross-examine those accusers. None of those rights were rendered meaningful in this case, however, because the notice of the meeting was not given sufficiently in advance to enable Ms. Bagby to prepare a defense or to ascertain how her interests might best be served in relation to the confrontation and cross-examination of her accusers. In addition, at the time of the suspension, September 17, 1976, Ms. Bagby had an available avenue of post-suspension appeal, namely her rights under the collective bargaining agreement. This appeal is no longer open to Ms. Bagby because she is not now employed by the Commonwealth of Pennsylvania. Therefore, the hearing which the Court will order must be adequate to give Ms. Bagby not only the rights she would have enjoyed at the initial hearing but also some of the protections which would have been afforded in any post-suspension proceeding. Further, the case is in a vastly different posture than it was prior to September 9, 1976. Ms. Bagby has retained an attorney who is perhaps in a better position to defend her interests than she is. A number of documents, including a written summary of the September 9, 1976 meeting and written charges concerning abuse of patients, are available now which were not in existence at the time of the original meeting. The review of such documents will take time. Finally, there may be other written documents which the Commonwealth intends to rely upon in considering the charges against Ms. Bagby. Those documents should be made available to her and to her attorney for inspection at a time sufficiently prior to the hearing to afford Ms. Bagby a reasonable opportunity to contest the charges if she desires to do so. Finally, on September 9, 1976, due process required no more than that a hearing be held at South Mountain in front of an official who had input into the decision-making process. Mr. Brubaker and Mr. Downs, however, have both been sued in federal court by Ms. Bagby and have been subjected to cross-examination by her attorney in open court. It is possible that they now perceive themselves in an adversary relation to her. Due process also requires that an impartial decisionmaker preside at a hearing. *See Mattern v. Matthews,* 582 F.2d 248 (3d Cir. 1978). Therefore, someone other than Mr. Downs or Mr. Brubaker must preside at Ms. Bagby's new hearing.

 Taking all these factors into account, the Court has determined that as an appropriate equitable remedy a hearing should be held which incorporates the following procedures.

(1) The hearing shall be held within four months of the date of this Order.

(2) Ms. Bagby and her counsel shall be provided with at least 10 days' written notice of the time and place of the holding of the hearing.

(3) The Defendants shall provide to Ms. Bagby and her counsel at least 15 days prior to the hearing copies of any written statements or other documentary evidence upon which they intend to rely at the hearing which are not already in the possession of Ms. Bagby or her counsel as a result of discovery engaged in by counsel prior to the trial of this case or which she has obtained by other means.

(4) The hearing examiner shall be any person employed by the Pennsylvania Department of Welfare who holds the status of personnel director or higher and who generally engages in decisions relating to whether or not to suspend or terminate probationary employees. The hearing examiner shall not be anyone who was a named defendant in this case.

(5) Ms. Bagby shall be given the opportunity to be represented by counsel at the hearing.

(6) The witnesses against Ms. Bagby shall appear at the hearing and shall be subject to cross-examination. All witnesses shall testify under oath.

(7) The hearing examiner shall render a written decision within 10 days of the date of the hearing. A copy of the decision shall

be furnished to Ms. Bagby and a copy shall be filed with the Court within 7 days of the date that it is issued.

(8) The hearing may be recorded either by stenographer or non-stenographic means but need not be so recorded. Any party desiring that a transcript be made shall bear the cost of making such a transcript.

The Court will also order that no member of the Pennsylvania Civil Service Commission shall permit any person to examine the record relating to Ms. Bagby's prior suspension until the decision of the hearing examiner is rendered and will retain jurisdiction over this case to enter such further orders as may be appropriate upon application from either party following the filing with the Court of the result of the hearing.

IV. Conclusions of Law.

1. Defendants Downs and Brubaker violated Bagby's right under the due process clause of the Fourteenth Amendment by failing to provide her with adequate notice of her pre-suspension hearing.

2. Defendants Downs and Brubaker are immune from liability for damages because they acted reasonably and with a good faith belief that they were entitled so to act with regard to Ms. Bagby's suspension.

3. None of the other named Defendants violated Bagby's constitutional rights.

4. Ms. Bagby is entitled to a hearing in accordance with the procedures set forth in the opinion and order of the Court.