**Francis PELTACK, Plaintiff,**

**v.**

**BOROUGH OF MANVILLE, a municipal corporation; William Ferencz, Individually; Dietmar Panzig, Individually; Rudolph Nowak, Individually, Marion B. Dudash, Individually, Kenneth Shulack, Individually, Chester Raczowski, Individually, Jeanne Golden, Individually; and Donald C. Chase, Individually, Defendants.**

**Civ. A. No. 81–3645.**

United States District Court,
D. New Jersey,

Sept. 23, 1982.

---

Edward J. Barone, New Brunswick, N. J., for plaintiff.

Wharton, Stewart & Davis by Francis X. Hermes, Somerville, N. J., for defendant Borough of Manville.

John F. Richardson, Somerville, N. J., for individual defendants.

## OPINION

HAROLD A. ACKERMAN, District Judge.

Under New Jersey's criminal code a person holding public office, whether elective or appointive, must forfeit that office upon his or her conviction of an offense "involving or touching such office." N.J.S.A. 2C:51–2 as repealing N.J.S.A. 2A:135–9. That law also provides that "[i]f the conviction be reversed, he shall be restored, if feasible, to his office ... with all the rights, emoluments and salary thereof from the date of forfeiture." N.J.S.A. 2C:51–2(b)(2). Plaintiff, Francis Peltack, has brought this suit under the Civil Rights Act 42 U.S.C. §§ 1983, 1985, 1986, against the Borough of Manville and certain public officials of that municipality alleging that the defendants' failure to restore him to his office as Borough Clerk, pursuant to the statute just quoted violated due process.

The case is presently before me on the motion of the Borough for leave to amend its answer, on plaintiff's motion for an order establishing guidelines for a hearing, and on cross motions for summary judgment premised on various theories. Specifically, plaintiff seeks summary judgment on the basis that while New Jersey law requires that he be afforded a hearing prior to his removal from his tenured position, he was not afforded one. The Borough alleges that it is entitled to summary judgment because plaintiff did not comply with the notice requirements of the New Jersey Tort Claims Act, N.J.S.A. 59:8–8, because no hearing was required under state law or because plaintiff had no constitutionally protected property right to continued employment. The individual defendants allege that they are entitled to absolute immunity for their actions taken with respect to plaintiff's office and that plaintiff will be

unable to substantiate his claim of conspiracy under 42 U.S.C. § 1985. These motions obviously overlap to some extent.

For the reasons I will set forth, I have determined that plaintiff has a constitutionally protected property interest in restoration to office under § 2C:51–2, the deprivation of which can only be allowed after notice and an opportunity to be heard. Further I have determined that there is no factual dispute with respect to whether plaintiff was afforded the process which was his due. In addition, I will dismiss the Second Count of the complaint for failure to state a claim cognizable under 42 U.S.C. § 1985 and I will dismiss the First Count vis-a-vis the individual defendants.

Fed.R.Civ.P. 56 provides that judgment is not to be granted summarily unless, after all reasonable inferences are drawn in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See DeLong Corp. v. Raymond Internat'l., 622 F.2d 1135 (3d Cir. 1980). The facts with respect to the chronology of events are undisputed.

Plaintiff was the Borough Clerk in Manville from 1954 until 1977. He attained tenure status after five successive appointments. In March 1977, plaintiff was indicted for conspiracy and misconduct in office involving alleged "kick backs" on municipal vending contracts. By resolution dated March 22, 1977, plaintiff was suspended without pay because of the indictment. Following his conviction in April 1978, plaintiff was given a hearing on the issue of terminating his appointment based upon the charges of conspiracy and misconduct and the forfeiture provision of the criminal code. That hearing was held on June 14, 1978, and resulted in a determination that plaintiff's continued employment "would be incompatible with the welfare" of the Borough. Certification of Beisler, ¶ 6. In February 1980, plaintiff's conviction was overturned and a new trial ordered.[1] That trial resulted in October 1980 in plaintiff's acquittal.

By letter dated October 14, 1980, plaintiff's counsel requested the defendants to reinstate the plaintiff to his public office with full pay and benefits, including reimbursement for his defense expenses. The Borough took the matter under advisement, but responded on June 18, 1981 that a settlement could not be reached. The letter also stated that it was the position of the defendants that plaintiff was not entitled to return to office for two reasons: one, the position of Borough Clerk had been abolished in February 1979 and the Council now operated with an Administrator/Clerk for which plaintiff did not qualify educationally;[2] and two, plaintiff was still considered unfit for public office based upon evidence admissible in a civil proceeding. The letter is ambiguous as to whether a hearing would be accorded plaintiff. It stated: "This now terminates this matter ..."

On September 18, 1981 plaintiff notified the defendants pursuant to the New Jersey Tort Claims Act of his claim of a violation of his constitutional right to due process. N.J.S.A. § 59:8–8. This suit followed on November 23, 1981. At the beginning of June of this year, plaintiff received written charges from the defendants and notice that a hearing will be held to consider the charges as a basis for terminating his employment. That hearing has been adjourned pending a determination on these motions.

Before I turn my attention to the question of plaintiff's procedural due process rights, I will address the other collateral motions. The Borough argues that plaintiff's complaint should be dismissed because he did not wait for six months from the

1. State v. Peltack, 172 N.J.Super. 287, 411 A.2d 1156 (App.Div.1980).

2. Ordinance No. 484 of the Borough of Manville established the full-time office of Administrator/Clerk. It was passed on February 8, 1979. As stated in plaintiff's brief, the position of Borough Clerk still exists but with greatly circumscribed responsibilities and at a substantially reduced salary. That claim has not been substantiated by evidence in the record, but I need not reach that question today.

date his tort claims act notice was received before filing suit. The Borough recognizes correctly, I believe, that an action under the civil rights statutes borrows the limitations period from an analogous state statute of repose. *See Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1978). Where the defendant to a civil rights action is a municipality or public entity, this court and others have applied the two-year statute of limitations provided in N.J.S.A. 59:8–8. *See Gipson v. Twp. of Bass River,* 82 F.R.D. 122 (D.N.J. 1979); *and Lloyd v. Borough of Stone Harbor,* 179 N.J.Super. 496, 432 A.2d 572 (Ch. 1981). However, the federal action is not thereby restricted to the full parameters of the tort claims act. To incorporate all the procedural provisions of the state statute borrowed for one purpose only would unduly infringe upon the assertion of federally created rights. *Gipson, supra.* 82 F.R.D. at 126; *and Paschall v. Mayone,* 454 F.Supp. 1289, 1298 (S.D.N.Y.1978).

■ Here while plaintiff filed a notice of claim, defendant points out that he did not allow six months to expire before filing suit thereby violating the conciliatory spirit of the statute. I find that the six month repose period cannot be appended to a federal civil rights suit for the reasons articulated in the cases just cited with respect to the notice provision. In addition there are two reasons why such a result would be unjust. First, the statute itself does not "forever bar" a state claim that has been filed too close on the heels of the notice. Second, in this instance, there has already been a six month opportunity for settlement sufficient to satisfy the act's conciliation purpose. This was the period between plaintiff's demand for reinstatement in October 1980 and defendant's response to that demand in July 1981. Settlement of this dispute has clearly been considered and discussed by the parties albeit prior to the filing of the tort claims notice. Negotiations having failed, plaintiff is entitled to take his case to court. Nothing would be served by interposing additional delay into this action. I will therefore deny the Borough's motion to dismiss on this ground.

■ This brings me to the Borough's motion for leave to amend its answer under Fed.R.Civ.P. 15(a). The defendant seeks to correct a date cited in ¶ 21 of its answer and to assert a new separate defense premised on the New Jersey Tort Claims Act. Rule 15(a) provides that "leave shall be freely given when justice so requires." I can see no reason to deny defendant's request although in light of my previous determination, it may feel that its second requested amendment is superfluous.

■ There is one more motion which is not directly related to plaintiff's claim of procedural due process: the individual defendants have moved for summary judgment on the plaintiff's Second Count which alleges a conspiracy on the part of the defendants to deprive plaintiff of his constitutional rights. The two acts alleged to have furthered the conspiracy are the 1979 resolution transforming the position of Borough Clerk and the denial of a reinstatement hearing after plaintiff's October 1980 acquittal. The defendants argue on this motion that discovery has revealed no facts through which plaintiff can prove a conspiracy among these named defendants. My review of the law under 42 U.S.C. § 1985 reveals a more fundamental problem with plaintiff's Second Count. Plaintiff has not alleged nor are there any facts in the record which could establish the existence of any discernable class of which plaintiff was a member. *See Kent Island Joint Venture v. Smith,* 452 F.Supp. 455 (D.Md.1978). The law is clear that to state a valid claim under § 1985(3) a plaintiff must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). As the plaintiff did in *Kent Island,* plaintiff here appears to have "seized upon the word 'conspire' without considering the context in which the word was used in the statute." 452 F.Supp. at 459. I must therefore dismiss this Count of the complaint.

I turn now to what must be considered the heart of plaintiff's complaint: the failure of the defendants to provide him a

hearing on his request for reinstatement pursuant to § 2C:51–2 in violation of his right not to be deprived of property without due process of law. As the Supreme Court recently stated in *Logan v. Zimmerman Brush Co.,* ―― U.S. ――, ――, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982), the analysis of a due process clause claim is conducted by means of a "familiar two-part inquiry": one, whether the plaintiff was deprived of a protected interest; and two, if so, what process was his due. For this first prong, I must look to New Jersey law: "A property interest may not be derived from the due process clause itself but must be created and defined by some independent source such as state law." *Bagby v. Beal,* 439 F.Supp. 1257, 1259 (M.D.Pa.1977) (denying defendants' motion to dismiss), 455 F.Supp. 881 (1978) (findings of fact and conclusions of law), *vacated as moot,* 606 F.2d 411 (3d Cir. 1979). *See also Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *and Pederson v. South Williamsport Area School District,* 677 F.2d 312 (3d Cir. 1982). As Justice Blackmun in *Logan* noted, "The hallmark of property, the Court has emphasized, is an individual entitlement grounded in state law, which cannot be removed except 'for cause.' " *supra,* ―― U.S. at ――, 102 S.Ct. at 1155.

The statute at issue here, N.J.S.A. 2C:51–2(b)(2) provides, as quoted earlier: "If the conviction be reversed, he shall be restored, if feasible, to his office ... with all the rights, emoluments and salary thereof from the date of forfeiture." This statute went into effect on September 1, 1979. It replaced N.J.S.A. 2A:135–9 which provided:

> If the conviction of such officer be reversed, he shall be restored to his office, or position with all the rights and emoluments thereof from the date of the forfeiture.

Defendants claim that the inclusion in the revised criminal code of the words "if feasible" negates an inference that the statute creates any legitimate entitlement to restoration. I disagree.

Certainly § 2A:135–9 created an unqualified property right to restoration which vests upon the reversal of one's conviction. The only reported case to discuss the restoration provision confirms this analysis of the repealed act. *Hayes v. Hudson County Bd. of Freeholders,* 116 N.J.Super. 21, 280 A.2d 838 (App.Div.1971). In *Hayes,* the court was considering the procedures to be followed in replacing a freeholder whose office had become vacated due to forfeiture. The Appellate Division stated:

> We hold, moreover, that in the event of a reversal of the Wojtycha conviction prior to the end of his original term he will *automatically be revested in the office,* the term of any interim successor, appointive or elective, coming to an end at the same time. (Emphasis supplied)

*Id.* at 28, 280 A.2d 838.

The question then is whether the words "if feasible" divested the acquitted officeholder of all entitlement to his office or simply inserted a "for cause" standard into the provision. *Cf. Logan, supra,* ―― U.S. at ――, 102 S.Ct. at 1155. In my judgment, the latter construction is correct. While there is a paucity of legislative history on this revision of the criminal code, the Senate Judiciary Committee Statement includes the following comments on Chapter 51 of the proposed codification:

> Chapter 51 deals with the loss of rights (i.e., right to vote; right to hold office), which are incident to a conviction for a criminal offense. Chapter 51 also deals with such issues as the sealing of arrest records and the expungement of criminal records. Its provisions represent no significant change from existing law.

Senate Judiciary Comm. Statement to Senate, No. 738 with Senate Comm. Amendments, May 15, 1978 *reprinted* in 7 *Criminal Justice Quarterly* 64. I find that this confirms my interpretation that the words "if feasible" affects the process which will be due an acquitted officeholder but does not negate the property right to restoration.

■ There is no factual dispute that plaintiff was deprived of this property right. He has not been restored to office. However, this is only the first step of the mandated inquiry. The Constitution only protects one from being deprived of one's

property *without due process.* *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Once a property right has been demonstrated a court must look to federal law to define what are the minimum procedural requirements. *Logan, supra,* —— U.S. at ——, 102 S.Ct. at 1155; *Pederson v. South Williamsport Area School District,* 677 F.2d 312 (3d Cir. 1982); and *Bagby, supra,* 439 F.Supp. at 1261.

As summarized in the second *Bagby* opinion:

> Due process is not a fixed concept but varies according to the precise nature of the governmental function involved as well as the private interests affected by governmental action. *See ... Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593 [2600] 33 L.Ed.2d 484 (1972).

*Bagby v. Beal,* 455 F.Supp. 881, 887 (M.D. Pa.1978). Specifically, a court should consider the following factors, as recently reviewed by this Circuit:

> If a hearing is required, its timing and nature will depend on an appropriate accommodation of competing interests, including the importance of the private concern, the finality of deprivation, and the likelihood of governmental error. *See Mathews v. Eldridge,* 424 U.S. 319 [96 S.Ct. 893, 47 L.Ed.2d 18] (1976).

*Pederson, supra,* 677 F.2d at 316. As in *Pederson,* all of these factors are implicated here. The deprivation is final and plaintiff has a substantial interest in continued employment and in the receipt of salary and emoluments. A hearing will protect against the risk of an unfounded conclusion of "infeasibility" by the municipality without overburdening it fiscally or administratively. In this instance, the Borough has represented that at least as of June 1982 it has been willing and able to give the plaintiff a hearing. Therefore, "some type of hearing is unquestionably required." *Pederson, supra,* 677 F.2d at 316.

The timing and nature of the hearing is to be determined according to the particular circumstances of each case. *Logan, supra,* —— U.S. at ——, 102 S.Ct. at 1156. In this instance, where the property right revests upon the conclusion of a criminal judicial process, a predeprivation hearing does not make sense. What is required is a meaningful opportunity to be heard within a reasonable period of time following acquittal. On this issue of whether plaintiff had such a meaningful opportunity, there is no factual dispute that there has not as yet been a hearing. Therefore, plaintiff is entitled to summary judgment on the issue of deprivation of property without due process.

Where a person has been deprived of a constitutional right, that deprivation must be redressed. Traditionally, a court will direct that a hearing be held in order to satisfy due process, but other or additional remedies may be warranted. *See e.g., Skehan v. Bd. of Trustees of Bloomsburg State College,* 590 F.2d 470 (3d Cir. 1978). In view of the fact that defendants appear willing to provide plaintiff a hearing, when drawing all reasonable factual inferences in their favor, as I must for summary judgment purposes, I will stay this matter pending a hearing on "feasibility" by the Borough but retain jurisdiction to consider at a later date such other relief as may be warranted.

I stress that the hearing to implement N.J.S.A. § 2C:51–2 concerns only the issue of feasibility of return to public office and the nature of the hearing should so reflect. As *Pederson* reiterates, "fundamental fairness is what due process means." At a minimum, this would require an impartial decisionmaker, the right to be represented by counsel, the power to subpoena witnesses and documentary evidence, and an opportunity to testify. If the Borough believes that even with the reversal of conviction and its concomitant revocation of forfeiture there is still "good cause" to remove the plaintiff from his tenured position, a hearing in accordance with N.J.S.A. 40A:9–134 and 140.9 would be appropriate. As I do not read plaintiff's complaint to allege that such a hearing would deprive him of due process, I make no judgment as to the sufficiency of that statutory process.

One other motion must be addressed ·at this juncture in order that the parameters of relief be clearly defined, and that is,

the individual defendants' motion for summary judgment on the issue of immunity. The defendants argue that they are entitled to a grant of absolute immunity on policy grounds such as the desirability of encouraging public service and by analogy to the immunity granted legislators. I do not reach this novel question because I have determined that under the undisputed facts of this case, the defendants are entitled to a qualified good faith immunity. *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

In *Harlow,* Justice Powell stated:

> [O]ur decisions consistently have held that government officials are entitled to some form of immunity from suits for damages. As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability.

—— U.S. at ——, 102 S.Ct. at 2732. The Court in *Harlow* adjusted the traditional good faith immunity defense by reducing it to just an "objective component":

> [W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

—— U.S. at ——, 102 S.Ct. at 2733. Therefore the test on summary judgment which the court should apply is:

> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.

*Harlow, supra,* —— U.S. at ——, 102 S.Ct. at 2739.

As no court before today had held that § 2C:51–2 created a protected property interest which required a hearing where the public employer was contesting feasibility, I find as a matter of law that these defendants are immune from damages for the deprivation of plaintiff's right to a hearing. I feel compelled to remind the parties that the good faith intentions of the defendants in changing the Borough Clerk position to the Administrative/Clerk position has no relevance to whether plaintiff was entitled to a hearing. It may have relevance to the issue to be heard, *i.e.* feasibility.

In sum, I have granted plaintiff's motion for summary judgment on the issue of a constitutional due process violation, the individual defendants' motion for immunity and the Borough's motion to amend its answer. Further I have dismissed the § 1985 count of the complaint. All other motions have been denied. This matter is stayed. Jurisdiction is retained.